IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:11cv00043 |
| v. | ) |
| | ) |
| PITTSYLVANIA COUNTY, VIRGINIA and | ) |
| BOARD OF SUPERVISORS OF | ) By:  Michael F. Urbanski |
| PITTSYLVANIA COUNTY, VIRGINIA, | )       United States District Judge |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This lawsuit challenges the practice of the Board of Supervisors of Pittsylvania County, Virginia of regularly opening its meetings with Christian prayer.[1] This matter is currently before the court on plaintiff's Motion for Leave to Proceed Using Pseudonyms and for Protective Order (Dkt. # 3). A hearing was held on various pending motions in this case on December 9, 2011. Prior to the hearing, the court conferred with counsel in chambers and determined not to hear argument on the instant motion in open court, given the nature of the issues involved and the evidence filed under seal, and in light of the extensive briefing by the parties. In lieu of argument, the court gave the parties fourteen (14) days to file any additional evidence or briefs in support of their respective positions on the anonymity issue. Both parties submitted supplemental briefs. The court has reviewed all of the materials filed, considered carefully the arguments raised, and examined the relevant case law. This matter is now ripe for adjudication. For the reasons set forth herein, plaintiff's Motion for Leave to Proceed Using Pseudonyms and for Protective Order (Dkt. # 3) is **DENIED**.

---

[1] Defendant Board of Supervisors of Pittsylvania County is the governing body of defendant Pittsylvania County, Virginia. Defendants are hereinafter collectively referred to as "the Board."

I.[2]

The ultimate test for deciding if a plaintiff should proceed anonymously is whether plaintiff "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (quoting Doe v. Stegall, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)). This presumption of openness is firmly rooted in our nation's law. Doe 1 v. Merten, 219 F.R.D. 387, 390 (E.D. Va. 2004). Courts have long held that the First Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be "open to the public absent an overriding and clearly articulated interest to the contrary." Id. at 390-91 (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 576 (1980)). Indeed, anonymity is not contemplated by the Federal Rules of Civil Procedure. Rule 10(a) provides that "[t]he title of the complaint must name all the parties." The intent is to "'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'" Doe v. Hallock, 119 F.R.D. 640, 643 n.1 (S.D. Miss. 1987) (quoting Free Market Comp. v. Commodity Exch., Inc., 98 F.R.D. 311, 312 (S.D.N.Y. 1983)); Doe v. Rostker, 89 F.R.D. 158, 160 (N.D. Cal. 1981). Public access to a plaintiff's name "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." Stegall, 653 F.2d at 185 (citing Richmond Newspapers, 448 U.S. 555).

The presumption of openness is not absolute, however. In some limited circumstances, anonymity may be appropriate. The crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. Stegall, 653 F.2d at 185. If a

---

[2] The facts of this case are set forth in full in the Memorandum Opinion on defendants' motion to dismiss filed contemporaneously with this opinion. Those facts are incorporated herein by reference. Thus, this opinion proceeds directly to consider the instant motion.

plaintiff is granted leave to proceed using a fictitious name, the public is not denied its right to attend the proceedings or inspect the orders or opinions of the court on the underlying constitutional issue. Doe v. Barrow Co., 219 F.R.D. 189, 193 (N.D. Ga. 2003); see also Stegall, 653 F.2d at 185. "[T]he only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing." Barrow Co., 219 F.R.D. at 193.

Still, it is the exceptional case in which a court allows a party to proceed anonymously. James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993) (allowing a party to proceed anonymously is a "rare dispensation"); see also Raiser v. BYU, 127 F. App'x 409, 410-11 (10th Cir. 2005) (use of pseudonyms allowed in exceptional circumstances); M.M. v. Zavaras, 139 F.3d 798, 800 (10th Cir. 1998) ("There are a number of cases which recognize that identifying a party only by a pseudonym is an unusual procedure."); Southern Methodist Univ. Assoc. v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1997) (courts allow plaintiffs to use fictitious names in certain special circumstances); Frank, 951 F.2d at 323 ("It is the exceptional case in which a plaintiff may proceed under a fictitious name."); Roe v. Heil, No. 11-cv-01983-WJM-KLM, 2011 WL 3924962, at *1 (D. Colo. Sept. 7, 2011) ("'Proceeding under a pseudonym in federal court is, by all accounts, an 'unusual procedure.'"" (quoting Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000))); Does 1-114 v. Shalushi, No. 10-11837, 2010 WL 3037789, at *1 (E.D. Mich. July 30, 2010) ("[P]rivacy in one's identity in a public forum–such as a federal court–is the exception, not the rule."); Freedom From Religion Found. v. Cherry Creek Sch. Dist., No. 07-cv-02126-MSK, 2009 WL 2176624, at *5 (D. Colo. July 22, 2009) ("While case law recognizes that Rule 10(a) should not be applied inflexibly, identifying a plaintiff only by a pseudonym is an 'unusual practice.'" (quoting Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1125 (10th Cir. 1979))).

Party anonymity is a discretionary determination made by the trial court. See James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993). In James, the Fourth Circuit Court of Appeals outlined five factors to be considered by courts grappling with anonymity requests: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. 6 F.3d at 238. These factors are not exhaustive; other factors may be relevant depending on the specific circumstances of a case. See id. (noting these five factors, which were relevant to that particular case, were among those to be considered); see also Merten, 219 F.R.D. at 392 ("Importantly, this list of factors [in James] is not intended to be exhaustive; the particular facts of a case may suggest the relevance of additional factors." (footnote omitted)). The court must "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." Frank, 951 F.2d at 323 (citing Wynne & Jaffe, 599 F.2d at 713); see also Barrow Co., 219 F.R.D. at 193.

## II.

Four of the five factors identified by the Fourth Circuit in James can be dealt with rather concisely in the context of this particular case and are discussed below. See §§ II. A., C., D., & E., infra. The other factor outlined in James is set forth in a separate Appendix to this Memorandum Opinion for reasons explained below. See § II. B., infra.

### A.

The first James factor requires the court to consider whether Jane Doe has identified "a specific sensitive and personal privacy interest," Yacovelli v. Moeser, No. 1:02CV596, 2004 WL 1144183, at *6 (M.D.N.C. May 20, 2004), or whether she merely seeks to "avoid the annoyance and criticism" that comes with litigation. James, 6 F.3d at 238. Indeed, some citizens of Pittsylvania County have voiced criticism of this lawsuit in a very public manner, and it is likely that such criticism will continue as this case progresses. Certainly, on some level, plaintiff seeks to shield herself from opposition to and disapproval of her position in this case, as expressed by certain members of her community. See discussion, infra, § III. But it is also true that plaintiff has a specific privacy interest at stake. Religion lies at the heart of this case, and religion is a "quintessentially private matter." Stegall, 653 F.2d at 186; accord Yacovelli, 2004 WL 1144183, at *6; Barrow Co., 219 F.R.D. at 193; see also Engel v. Vitale, 370 U.S. 421, 431-32 (1962) ("[R]eligion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate."). While plaintiff's particular religious beliefs are not determinative of the constitutional question to be decided here, prosecution of this case will require plaintiff to reveal her "beliefs concerning the proper interaction between government and religion," which concerns can "implicate privacy matters similar to those associated with actual religious teachings and beliefs." Barrow Co., 219 F.R.D. at 193. As such, the first James factor weighs in plaintiff's favor.

### B.

The second factor articulated by the Fourth Circuit in James is whether identification poses a risk of retaliatory physical or mental harm to plaintiff or to innocent non-parties. This factor requires a more in depth analysis and is therefore set forth in a separate section of this

opinion. See § III, infra. Given the identifying nature of the evidence presented on the issue of harm, this portion of the analysis will be filed in an Appendix to this Memorandum Opinion, which will be placed under seal until further Order of the court.

### C.

The third James factor concerns the ages of the persons whose privacy interests are sought to be protected. Plaintiff is not a minor and does not possess the "special vulnerability" of a child-plaintiff. Stegall, 653 F.2d at 186. This factor weighs decidedly against anonymity. See id. (finding especially persuasive the fact that plaintiffs are children); Yacovelli, 2004 WL 1144183, at *8 (in case involving college students where one plaintiff was a minor at the time of filing but had since reached the age of majority, court held factor cut both ways since "college students may still possess the immaturity of adolescence"); Merten, 219 F.R.D. at 393 (factor weighed against anonymity where three of five plaintiffs were adults and the two minors were "on the verge of adulthood"); Doe v. North Carolina Cent. Univ., No. 1:98CV01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999) ("Courts are often more willing to allow parties to proceed anonymously in order to protect the privacy rights of children."); Doe v. Sante Fe Indep. Sch. Dist., 933 F. Supp. 647, 651-52 (S.D. Tex. 1996) (protecting the anonymity of the minor plaintiffs, but not the adult plaintiffs, and noting, "[a]dults are simply not as vulnerable as schoolchildren to social and physical intimidation or violence").

### D.

The fourth factor to be considered is whether the action is against a governmental or private party. "[C]ourts in general are less likely to grant a plaintiff permission to proceed anonymously when the plaintiff sues a private individual than when the action is against a governmental entity seeking to have a law or regulation declared invalid." Merten, 219 F.R.D. at

394 (citing Wynne & Jaffe, 599 F.2d at 713). Actions against the government do no harm to its reputation, whereas suits filed against private parties may damage their good names and result in economic harm. Wynne & Jaffe, 599 F.2d at 713. Thus, it is a matter of "[b]asic fairness" that a private-party defendant's accusers participate in the suit under their real names. Id.

But the reverse is not necessarily true. The simple fact that plaintiff sues a governmental entity does not give the court more reason to grant her request for anonymity.[3] "[O]f course, in only a very few cases challenging governmental activity can anonymity be justified." Stegall, 653 F.2d at 186. The fact that plaintiff sued her local government, as opposed to a private individual, is something to be considered by the court. However, this factor must be viewed in the context of Wynne & Jaffe, 599 F.2d 707, the case in which it was first articulated. Frank, 951 F.2d at 323.

In Wynne & Jaffe, four female lawyers sought to proceed anonymously in a Title VII case against two Dallas law firms. Noting most cases in which plaintiffs were allowed to proceed anonymously involved actions challenging government activity, the court distinguished the Title VII case because "[d]efendant law firms stand publicly accused of serious violations of federal law. Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." 599 F.2d at 713. As the Eleventh Circuit concluded in Doe v. Frank:

> Thus, because the plaintiffs were suing private individuals rather than a government agency, the court found *more* reason *not* to grant the plaintiffs' request for anonymity. Wynne & Jaffe does not stand, however, for the proposition that there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government. Consequently, the fact that Doe is suing the Postal

---

[3] See Doe v. Megless, 654 F.3d 404, 410 (3d Cir. 2011) (finding public interest in knowing plaintiff's identity is heightened "'because Defendants are public officials and government bodies'" (quoting Doe v. Megless, No. 10-1008, 2010 WL 3076246, at *4 (E.D. Pa. Aug. 5, 2010))).

> Service does not weigh in favor of granting Doe's request for anonymity.

951 F.2d at 324.

Nothing in the Fourth Circuit's James opinion is inconsistent with this conclusion. The Fourth Circuit listed this factor as one to be considered by courts weighing anonymity requests, noting specifically that it was relevant to the James case. 6 F.3d at 238. And James, like Wynne & Jaffe, involved a private-party defendant, not a governmental entity. There is no suggestion in James that a trial court has more reason to grant an anonymity request if the defendant is a governmental entity. It may well be that "courts are more like[ly] to permit plaintiffs to proceed under a pseudonym" when a plaintiff challenges the government rather than a private individual. Yacovelli, 2004 WL 1144183, at *8. But at least one district court within this circuit has declined to give this factor dispositive effect, for to do so "would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation." Merten, 219 F.R.D. at 394.

Viewing this factor in the context of both Wynne & Jaffe and James, the court gives it neutral weight.

### E.

Because there is little risk to the Board in allowing plaintiff to proceed anonymously, the fifth James factor weighs in plaintiff's favor. The Board argues that plaintiff's identity is germane to this litigation because it must be able to cross-examine plaintiff on her motivations for bringing this lawsuit in order to disprove actual injury. The Board takes the position that plaintiff has not been injured by its routinely Christian prayer, but rather that she brings this suit in retaliation against the Board.

However, plaintiff's motivations for bringing this lawsuit are inapposite.[4] As long as she has standing to sue,[5] this case revolves around a single legal issue–whether the Board's practice of regularly opening its meetings with Christian prayer violates the United States Constitution. See Barrow Co., 219 F.R.D. at 193. "Case law indicates that any risk of unfairness to a defendant as a consequence of allowing a plaintiff to proceed anonymously is minimized when the 'issues raised are purely legal and do not depend on identifying the specific parties.'" Merten, 219 F.R.D. at 394 n.22 (citing Doe v. Alaska, No. 96-35873, 1997 WL 547941, at *1 (9th Cir. Sept. 2, 1997)). This is not a case that turns on plaintiff's credibility. Barrow Co., 219 F.R.D. at 194. Indeed, "[a]t the end of the day, plaintiff plays a relatively minor role in this litigation," id., and the risk of unfairness to defendants by allowing plaintiff to proceed anonymously is relatively low.[6] As such, this fifth factor weighs in plaintiff's favor.

*[Sections III., IV., and V. of this Memorandum Opinion are set forth in the accompanying Appendix]*

### VI.

For the reasons set forth above and in the accompanying Appendix, plaintiff's Motion for Leave to Proceed Using Pseudonyms and for Protective Order (Dkt. # 3) is **DENIED**.

---

[4] The court notes that one of the factors bearing on anonymity articulated by the Third Circuit is "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." Megless, 654 F.3d at 409. The Board's claim that the filing of this suit was retaliatory, if true, indeed could be considered an ulterior motive and perhaps have some relevance to this analysis. But the Board does not develop this argument in its briefs and offers no evidence to support this contention. As such, the court cannot give this factor any significant weight.

[5] Plaintiff's standing to bring this action is addressed in the Memorandum Opinion on defendants' motion to dismiss filed contemporaneously herewith.

[6] It is also worth noting that the Board is already aware of plaintiff's identity, further diminishing any risk of unfairness to the Board should plaintiff be permitted to proceed anonymously.

While citizens of Pittsylvania County and members of the community at large are free to express their opinions on this case, **threatening or intimidating acts directed against anyone involved in this lawsuit will not be tolerated or condoned by inaction**. Individuals that become aware of such conduct should immediately notify the court or the United States Attorney for the Western District of Virginia.

As set forth in the accompanying Order, this case shall remain styled under the name of Jane Doe for thirty (30) days to allow plaintiff an opportunity to appeal the court's ruling on anonymity and/or determine whether she wishes to continue with this action under her actual name. See James, 6 F.3d at 238 (order denying plaintiffs' motion to proceed anonymously is appealable under the collateral order doctrine). After thirty (30) days has expired, if no appeal has been noted on the anonymity issue and if plaintiff intends to proceed, she must apprise the Clerk of her actual name and the Clerk shall style this case in plaintiff's actual name. At that time, the court will enter a separate Order unsealing the Appendix to this Memorandum Opinion.[7]

Entered: February 3, 2012

/s/ Michael F. Urbanski
Michael F. Urbanski
United States District Judge

---

[7] The Order also will direct the Clerk to unseal the parties' filings as to the issue of anonymity, Dkt. #s 16, 22, 26, 32, 33, and 37.