CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**FEB 0 3 2012**

JULIA C. DUDLEY, CLERK
BY: *[signature]*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 4:11cv00043 |
| **v.** | ) | |
| | ) | |
| **PITTSYLVANIA COUNTY, VIRGINIA and** | ) | |
| **BOARD OF SUPERVISORS OF** | ) | **By:  Michael F. Urbanski** |
| **PITTSYLVANIA COUNTY, VIRGINIA,** | ) | **United States District Judge** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff's Motion for Preliminary Injunction (Dkt. # 5). Plaintiff seeks an Order precluding defendants Pittsylvania County Board of Supervisors and Pittsylvania County, Virginia (hereinafter collectively referred to as "the Board") from routinely opening its Board meetings with Christian prayers during the pendency of this action.  The matter has been fully briefed, and a hearing on this motion was held on December 9, 2011.

For the following reasons, the court finds that:  (1) plaintiff is likely to succeed on the merits of her Establishment Clause claim; (2) she is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of the equities in this case justifies a preliminary injunction; and (4) a preliminary injunction is in the public interest.  Accordingly, as set forth in the accompanying Order, plaintiff's Motion for Preliminary Injunction is **GRANTED,** and the Board is **PRELIMINARILY ENJOINED,** during the pendency of this case, from continuing its present practice of routinely opening its meetings with Christian prayers.  Expressly following the injunction approved by the Fourth Circuit in <u>Wynne v. Town of Great Falls</u>, 376 F.3d 292, 302 (4th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1152 (2005), the Board

is **PRELIMINARILY ENJOINED**, during the pendency of this case, "from invoking the name

of a specific deity associated with any one specific faith in prayers given at [Board] meetings."

      This preliminary injunction does not preclude the Board from beginning its meetings with

a prayer that does not run afoul of the Establishment Clause.  The Board may open its meetings

with a prayer or invocation, but in doing so it "must strive to be nondenominational so long as

that is reasonably possible–it should send a signal of welcome rather than exclusion.  It should

not reject the tenets of other faiths in favor of just one."  <u>Joyner v. Forsyth County</u>, 653 F.3d 341,

349 (4th Cir. 2011), <u>cert. denied</u>, ___ U.S. ___, 2012 WL 117559 (Jan. 17, 2012).

<strong>I.</strong>[1]

      "A preliminary injunction is an extraordinary remedy never awarded as of right."  <u>Winter</u>

<u>v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008); <u>Real Truth About Obama, Inc. v. Fed.</u>

<u>Election Comm'n</u>, 575 F.3d 342, 345 (4th Cir. 2009), <u>vacated on other grounds</u>, 130 S. Ct. 2371

(2010).  It is a remedy that is "'granted only sparingly and in limited circumstances.'"

<u>MicroStrategy, Inc. v. Motorola, Inc.</u>, 245 F.3d 335, 339 (4th Cir. 2001) (quoting <u>Direx Israel,</u>

<u>Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 816 (4th Cir. 1991) (internal quotation marks

omitted)).  The Court in <u>Winter</u> explained that in each case, courts "must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief."  <u>Amoco Prod. Co. v. Gambell</u>, 480 U.S. 531, 542 (1987).  "In exercising their

sound discretion, courts of equity should pay particular regard for the public consequences in

employing the extraordinary remedy of injunction."  <u>Weinberger v. Romero-Barcelo</u>, 456 U.S.

305, 312 (1982); <u>see also</u> <u>Railroad Comm'n of Tex. v. Pullman Co.</u>, 312 U.S. 496, 500 (1941).

---

[1] The facts of this case are set forth in full in the Memorandum Opinion on defendants' motion to dismiss filed contemporaneously with this opinion.  Those facts are incorporated herein by reference.  Thus, this opinion proceeds directly to consider the preliminary injunction motion.

Therefore, following the holdings of the Court in <u>Winter</u>, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. at 20.  A preliminary injunction cannot be issued unless all four of these elements are met.  <u>Id.</u>

In this case, plaintiff asserts that she meets all four of these required elements.  She argues that she is likely to succeed on the merits of her Establishment Clause claim because the prayers voiced by the Board consistently and repeatedly refer to the Christian deity; that she will suffer irreparable harm during the pendency of this litigation if she is consistently exposed to government-sponsored sectarian prayer that is specifically Christian in nature; that the violation of a fundamental constitutional right tips the balance of equities in her favor; and that it is in the public interest to uphold such rights.

The Board, on the other hand, asserts that plaintiff fails to meet any of the four necessary elements, arguing that she is unlikely to succeed on the merits of her Establishment Clause claim; her injuries are too remote and speculative to be irreparable; the balance of equities tips in the Board's favor because plaintiff seeks to restrict the functioning of a governmental body; and a preliminary injunction in this case is not in the public interest because it would hinder the Board's ability to operate and serve the citizens of Pittsylvania County.

Having given the issue careful consideration, the court finds that plaintiff plainly meets all four of the preliminary injunction elements, and that preliminary injunctive relief is mandated in this case.

**A. Likelihood of Success on the Merits.**

A preliminary injunction first requires plaintiff to prove that she is likely to succeed on the merits of her Establishment Clause claim.  See Winter, 555 U.S. at 20.  As set forth in detail in the court's Memorandum Opinion denying the Board's motion to dismiss, the Supreme Court and Fourth Circuit have made it very clear that the Board's practice of routinely opening its meetings with Christian prayer violates the Establishment Clause.  County of Allegheny v. ACLU Greater Pittsburgh Chapter, 492 U.S. 573 (1989); Marsh v. Chambers, 463 U.S. 783 (1983); Joyner, 653 F.3d 341; Wynne, 376 F.3d 292.

As was the case in Wynne and Joyner, plaintiff is likely to prevail on her claim that the Board's practice of regularly opening meetings with prayers making specific reference to Jesus Christ constitutes government advancement and endorsement of one faith violative of the Establishment Clause.  Because the Board's consistent practice has been to routinely invoke the name of the Christian deity in its prayers, plaintiff is likely to prevail on her claim that the Board's actions demonstrate a preference for Christianity over other religious denominations. Such a preference is inconsistent with the Establishment Clause.  Given the clear pronouncements of the Fourth Circuit in Wynne and Joyner,[2] there can be little doubt that plaintiff is likely to succeed on the merits and has established the first necessary element for preliminary injunctive relief.

---

[2] Both in argument and on brief, the Board advocates the position taken by the dissent in Joyner and argues that the case was wrongly decided by the Fourth Circuit majority.  In opposing preliminary injunctive relief, the Board urged the court to wait until the Supreme Court considers the petition for writ of certiorari filed by the Forsyth County Board of Commissioners.  As the Court denied certiorari in Joyner on January 17, 2012, the Board's argument is foreclosed, and Joyner remains the law of this circuit.

### B. Irreparable Harm.[3]

In order to prevail on her motion for preliminary injunction, plaintiff must prove that she is likely to suffer irreparable harm in the absence of preliminary relief. See Winter, 555 U.S. at 20. "Irreparable injury must be *likely*, rather than just possible." Canada v. Fannin, No. 7:10cv00432, 2011 WL 2600578, at *2 (W.D. Va. June 29, 2011) (citing Winter, 555 U.S. at 21). In determining what is considered irreparable harm, the "key word . . . is irreparable." Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps, 444 F. Supp. 1167, 1182 (W.D. Va. 1978).

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that an adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Id. (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).

The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).[4]  The Fourth Circuit has followed suit. See Newsom v. Albemarle County, 354 F.3d 249, 261 (4th Cir. 2003); Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 520-21 (4th Cir. 2002); see also Johnson v. Bergland, 586 F.2d 993, 995 (4th Cir. 1978) (holding that "[v]iolations of first amendment rights constitute per se irreparable injury"). While Newsom,

---

[3] As addressed in detail in the Memorandum Opinion on defendants' motion to dismiss, plaintiff's direct contact with the Board's routine, Christian prayer establishes her injury in fact and standing to bring this action. This opinion proceeds to address the irreparable nature of that injury.

[4] Elrod involved violations of the First Amendment freedom of association stemming from alleged patronage employment decisions based on political affiliation. 427 U.S. at 349.

Bason and Bergland all hold that irreparable injury flows from a violation of the First

Amendment, none involved the Establishment Clause.[5]

In Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290 (D.C. Cir. 2006), on

remand, 516 F. Supp. 2d 119 (D.D.C. 2007), aff'd, 534 F.3d 756 (D.C. Cir. 2008), cert. denied,

129 S. Ct. 1918 (2009),[6] the District of Columbia Circuit Court of Appeals addressed the issue of

irreparable harm in the Establishment Clause context, and in so doing, emphasized the per se

nature of the irreparable injury attendant to an Establishment Clause violation.  The D.C. Circuit

first contrasted an Establishment Clause claim from other First Amendment violations:

> [T]he pertinent liberty [in an Establishment Clause claim] is
> protection against government imposition of a state religion or
> religious preference.  This protection, unlike other First
> Amendment rights that are variants of the freedom to express
> oneself, requires no affirmative conduct on the part of the
> individual before its guarantees are implicated by government
> action.

Id. at 302.  After highlighting the difference between violations of the Establishment Clause and

other First Amendment claims, the court emphasized that the harm associated with an

Establishment Clause violation occurs immediately upon the government's preference or

endorsement of religion:

> [W]hile we have required individuals seeking a preliminary
> injunction on First Amendment grounds to demonstrate a
> likelihood that they are engaging or would engage in the protected

---

[5] Newsom reversed denial of a preliminary injunction involving the free speech implications of a school dress code. Bason involved a First Amendment challenge to a state statute outlawing exotic dancing on free speech grounds.  In Bergland, the Fourth Circuit reversed the denial of preliminary injunctive relief in a First Amendment case involving removal of a state employee on partisan political grounds.

[6] Although Chaplaincy of Full Gospel Churches has some subsequent history, it does not bear on the issue of irreparable injury.  In the decision of the D.C. Circuit discussed in detail in this opinion, the court reversed the district court's denial of a preliminary injunction, concluding that irreparable harm necessarily flowed from an Establishment Clause violation.  As such, the court remanded the case to the district court to "carry out the remainder of the preliminary injunction analysis."  454 F.3d at 305.  The subsequent history of the case dealt with the issue of standing, and none of the ensuing opinions address or modify the court's analysis of the irreparable harm element of the preliminary injunction calculus.

> activity the governmental action is purportedly infringing, we have
> done so only in the context of free expression, where the relevant
> constitutional protection is not implicated without some
> corresponding individual conduct that faces a danger of chilling.
> *But the Establishment Clause is implicated as soon as the
> government engages in impermissible action.* Where, as here, the
> charge is one of official preference of one religion over another,
> such governmental endorsement "sends a message to nonadherents
> [of the favored denomination] that they are outsiders, not full
> members of the political community, and an accompanying
> message to adherents that they are insiders, favored members of
> the political community." Lynch v. Donnelly, 465 U.S. 668, 688
> (1984) (O'Connor, J., concurring).  This harm . . . occurs merely
> by virtue of the government's purportedly unconstitutional policy
> or practice establishing a religion, without any concomitant
> protected conduct on the movants' part.

Id. (emphasis added).

The D.C. Circuit went on to explain that as an Establishment Clause violation occurs as

soon as the government engages in conduct exhibiting a preference of one religion over another,

irreparable harm necessarily follows:

> Because, when an Establishment Clause violation is alleged,
> infringement occurs the moment the government action takes
> place—without any corresponding individual conduct—then to the
> extent that the government action violates the Establishment
> Clause, First Amendment interests *are* "threatened and in fact
> being impaired."  Of course, this raises the question of the extent to
> which the disputed government action actually violates the
> Establishment Clause—but this inquiry is addressed by another
> prong of the preliminary injunction calculation, the likelihood of
> the movant's success on the merits.  Within the irreparable harm
> analysis itself . . . we examine only whether that violation, if true,
> inflicts irremediable injury.  And because of the inchoate, one-way
> nature of Establishment Clause violations, which inflict an
> "erosion of religious liberties [that] cannot be deterred by awarding
> damages to the victims of such erosion," [Am. Civil Liberties
> Union of Ill. v.] City of St. Charles, 794 F.2d 265, 275 (7th Cir.
> 1986), we are able to conclude that where a movant alleges a
> violation of the Establishment Clause, this is sufficient, without
> more, to satisfy the irreparable harm prong for purposes of the
> preliminary injunction determination.

7

Id. at 303.

Consistent with the D.C. Circuit's holding in Chaplaincy of Full Gospel Churches, other circuit courts of appeals also have applied Elrod's teaching that even minimal losses of First Amendment freedoms work irreparable harm in the context of the Establishment Clause. See Am. Civil Liberties Union v. McCreary County, 354 F.3d 438, 445 (6th Cir. 2003) (stating that "a successful showing on the first factor [regarding likelihood of success on the merits] mandates a successful showing on the second factor—whether the plaintiff will suffer irreparable harm"), aff'd, 545 U.S. 844 n.15 (2005); Ingebretsen v. Jackson Pub. Sch. Dist., 88 F.3d 274, 280 (5th Cir.) ("Loss of First Amendment freedoms, even for minimal periods of time, constitute irreparable injury."), cert. denied, 519 U.S. 965 (1996); Parents' Ass'n of P.S. 16 v. Quinones, 803 F.2d 1235, 1242 (2d Cir. 1986) (same); Doe v. Duncanville Indep. Sch. Dist., 994 F.2d 160, 166 (5th Cir. 1993) ("Assuming that the Does' Establishment Clause rights have been infringed, the threat of irreparable injury to the Does and to the public interest that the clause purports to serve are adequately demonstrated."); Am. Civil Liberties Union of Ill. v. City of St. Charles, 794 F.2d 265, 275 (7th Cir.) ("If preliminary injunctions were not available in cases brought to enforce the [E]stablishment [C]lause, government might be able to erode the values that the clause protects with a flood of temporary or intermittent infringements."), cert. denied, 479 U.S. 961 (1986).

Consistent with these cases, it is clear that plaintiff is likely to suffer irreparable harm if denied preliminary relief.  Plaintiff has alleged that she has had unwelcome direct contact with the Christian prayers of the Board at its meetings.  The Board meets twice a month and routinely opens each meeting with a Christian invocation delivered by one of its members.  Plaintiff, a resident of Pittsylvania County, has attended nearly every Board meeting since October 2008

8

"because she believes it is important to observe and understand the workings of her local

government. She intends to continue attending every meeting." Verified Compl., Dkt. # 1, at

¶ 10. Plaintiff alleges that "[t]he opening invocation at nearly every meeting is explicitly

Christian in nature; that is, it invokes the name of 'Jesus Christ' 'Jesus' or 'Christ.'" Id. at ¶ 8.

Plaintiff alleges that the Christian prayers convey to her the message that she and other non-

Christian citizens are not welcome at Board meetings; that "the Board is unlikely to treat non-

Christians fairly because they do not follow the Board's preferred faith;" and that they make her

feel like an outsider in her own community. Id. at ¶ 11. Plaintiff alleges that "as a citizen and

resident of Pittsylvania County [she] is entitled to attend meetings of her Board of Supervisors

without being subjected to prayers that advance and prefer one religion, Christianity, to the

exclusion of other religions that do not recognize the deity of Jesus, including but not limited to

Judaism, Islam and Hinduism." Id.

     Plaintiff's evidence offered in support of her preliminary injunction motion amply

supports her allegations. The uncontroverted Declaration of Rebecca K. Glenberg, Dkt. # 6, at

Ex. 1, provides that of the audible recordings of Board meetings between August 2, 2010 and

August 16, 2011, 87.5% "opened with explicitly Christian prayers; that is, the prayers mentioned

'Jesus,' 'Christ,' or 'Jesus Christ.'" Id. at ¶ 6. The Second Supplemental Declaration of

Rebecca K. Glenberg, Dkt. # 24, contains transcriptions of prayers delivered immediately before

the opening gavel of the Board's meetings on September 6 and 20 and October 3 and 18, 2011.

Each of the eight prayers delivered refers explicitly to "Lord" and "Jesus" or "Jesus Christ." Id.

at ¶ 4. The declaration further provides that prior to the September 20, 2011 prayer, the Board

member delivering the prayer said, "'If you don't want to hear this prayer, you can leave. Please

stand up.'" Id. at ¶ 5. Plaintiff submitted a Supplemental Declaration, Dkt. # 25, indicating that

9

the Board's opening prayers immediately before the opening gavel on November 1 and December 5, 2011 "invoked the name of 'Jesus,' 'Christ,' or 'Jesus Christ.'" Id. at ¶¶ 2-3.

The evidence that the Board routinely opens its meetings with Christian prayer makes it abundantly clear that plaintiff is likely to prevail on the claimed Establishment Clause violations which, even for a short period of time, constitute irreparable harm sufficient for preliminary injunction purposes. Every time plaintiff attends a Board meeting and comes in direct contact with an overtly Christian prayer, she experiences a recurring First Amendment injury. The uncontradicted evidence submitted in support of the preliminary injunction motion establishes that the Board's opening prayers consistently, repeatedly and specifically refer to the Christian deity. Because plaintiff asserts that she will continue attending Board meetings in the future, she will likely suffer this First Amendment injury over and over again during the pendency of this litigation as long as the Board continues its routine practice of beginning each meeting with a decidedly Christian invocation.

The Board argues that plaintiff has sustained no irreparable injury because she is not required to attend Board meetings or listen to its prayers; has attended Board meetings for years without filing suit; and has been involved with disputes with the Board in other contexts. None of these points have any relevance to the irreparable harm analysis for purposes of the alleged Establishment Clause violation. Plaintiff has a right to attend public meetings of the Board and see her local government in action without being subjected to prayers delivered by Board members to their preferred deity. Her unwelcome direct contact with the Board's routinely Christian prayer is, in and of itself, sufficient to establish irreparable injury for the purposes of a preliminary injunction. Plaintiff's evidence plainly meets the irreparable injury element.

10

## C. Balance of Equities.

In considering a request for preliminary injunctive relief, a court must weigh the balance of equities between the parties. See Winter, 555 U.S. at 20. In this case, the court finds that the balance of equities weighs heavily in favor of the plaintiff. As addressed herein and in the Memorandum Opinion on defendants' motion to dismiss, plaintiff's allegations establish a cognizable First Amendment injury, and she suffers irreparable harm every time she attends a Board meeting during the course of this litigation and comes in direct contact with Christian prayer that she finds offensive. She asserts that these prayers make her feel unwelcome and raise concerns about the fairness with which she and other non-Christian citizens will be treated by the Board.

While the Board argues that a preliminary injunction on its opening invocation will place a "restrictive injunction" on a governmental body, a preliminary injunction in this case will work no harm to the Board's legitimate and lawful interests. The Board is in no way harmed by the issuance of a preliminary injunction that prevents it from continuing its Christian prayer practice, which, on this record, is likely to be found unconstitutional. See Newsom, 354 F.3d at 261; Bason, 303 F.3d at 521. Further, a preliminary injunction in this case will not prevent the Board from solemnizing its meetings by engaging in legislative prayer that is consistent with the Establishment Clause. In the words of the Fourth Circuit in Joyner, "[t]his is not to say that the Board must abandon the practice of legislative prayer." 653 F.3d at 354. Indeed, in Turner v. City Council of Fredericksburg, 534 F.3d 352, 356 (4th Cir. 2008), cert. denied, 555 U.S. 1099 (2009), and Simpson v. Chesterfield Co. Bd. of Supervisors, 404 F.3d 276, 284 (4th Cir.), cert. denied, 546 U.S. 937 (2005), the Fourth Circuit found that the nondenominational and nonsectarian prayer practices of the Fredericksburg City Council and the Chesterfield County

11

Board of Supervisors were constitutional.  In contrast, the prayer practices of the Board in this case, just as those of the Forsyth County Board of Commissioners in Joyner and the Town Council of Great Falls in Wynne, consistently and repeatedly:

> contain explicit references to a deity in whose divinity only those of one faith believe.  The invocations at issue here, which specifically call upon Jesus Christ, are simply not constitutionally acceptable legislative prayer like that approved in Marsh.  Rather, they embody the precise kind of "advance[ment]" of one particular religion that Marsh cautioned against.

Wynne, 376 F.3d at 301-02 (alteration in original).

While the written prayer policy of the Board adopted on September 6, 2011 contains language consistent with the requirements of the Establishment Clause, it is merely window dressing.  The evidence shows that the actual prayer practice of the Board has remained consistently Christian-based since its enactment.  To allow such a practice to continue would be plainly contrary to "'[t]he clearest command of the Establishment Clause . . . that one religious denomination cannot be officially preferred over another.'"  Wynne, 376 F.3d at 302 (quoting Larson v. Valente, 456 U.S. 228, 244 (1982)).  Accordingly, plaintiff has established the third necessary element for injunctive relief, because the balance of equities tips strongly in her favor.

**D.  Public Interest.**

Finally, before granting a motion for preliminary injunction, the court must find that such relief is in the public interest.  See Winter, 555 U.S. at 20.  The Fourth Circuit has held that in the context of a request for preliminary injunction, "upholding constitutional rights surely serves the public interest."  Bason, 303 F.3d at 521.  The court agrees and finds that it is in the public interest to protect plaintiff's constitutional rights pending resolution of this case.  The Board argues that a preliminary injunction will greatly affect its ability to operate and serve the citizens of Pittsylvania County.  The Board further asserts that it provides a vital government function

12

and that the disruptive behavior that would accompany a preliminary injunction threatens its ability to function.  The court cannot agree.  The Board may continue to solemnize its meetings with opening invocations; it just must do so in a manner consistent with the Constitution.  See Turner, 534 F.3d at 356; Simpson, 404 F.3d at 284.  A preliminary injunction precluding the Board from repeatedly praying to one specific deity will not prevent the Board from opening its meetings with a constitutionally permissible invocation, from conducting its meetings, or from effectively performing its essential government functions.  To be sure, the Board must refrain from opening its meetings with repeated references to Christianity which "suggest the government has put its weight behind a particular faith," Joyner, 653 F.3d at 349.  But the injunction works no change to the business portion of the Board meetings which may proceed as normal, thus allowing the Board to continue serving the citizens of Pittsylvania County while simultaneously ensuring the protection of the constitutional rights of all.

## II.

Pursuant to Federal Rule of Civil Procedure 65(c), a district court must fix a bond whenever it grants a preliminary injunction "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "The purpose of the bond is to provide security for any damages resulting from an improvidently granted injunction." Rauch Indus., Inc. v. Radko, No. 3:07cv197C, 2007 WL 3124647, at *8 (W.D.N.C. Oct. 25, 2007).  "The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 n.3 (4th Cir. 1999).  The district court has discretion in fixing the amount for the security bond, and in circumstances where the risk of harm is remote, a nominal bond may suffice. Id. (approving district court's fixing bond amount at zero in the absence of

evidence regarding likelihood of harm (citing <u>Int'l Controls Corp. v. Vesco</u>, 490 F.2d 1334 (2d Cir. 1974))).

Because the prevailing law in this circuit makes it clear that it is highly likely that plaintiff will prevail on the merits and there can be no monetary damages or other harm to the Board from conducting its meetings in a manner consistent with the Establishment Clause, the court fixes the amount of the security bond at zero dollars in this case.

## III.

Having clearly met all of the requirements for a preliminary injunction, plaintiff's motion for preliminary injunction is **GRANTED**. As set forth in the accompanying Order, the Board is **PRELIMINARILY ENJOINED**, during the pendency of this case, from continuing its present practice of routinely opening its meetings with Christian prayers. Expressly following the injunction approved by the Fourth Circuit in <u>Wynne</u>, the Board is **PRELIMINARILY ENJOINED**, during the pendency of this case, "from invoking the name of a specific deity associated with any one specific faith or belief in prayers given at [Board] meetings." <u>Wynne</u>, 376 F.3d at 302.

Certainly, defendants may believe that this decision "indicate[s] a hostility toward religion or toward prayer. Nothing, of course, could be more wrong." <u>Engel v. Vitale</u>, 370 U.S. 421, 434 (1962). The founders of our nation, possessing "faith in the power of prayer . . . led the fight for adoption of our Constitution and also for our Bill of Rights with the very guarantees of religious freedom that forbid the sort of governmental activity which [the Board] has attempted here." <u>Id.</u> at 434-35. Fifty years ago, Justice Black writing for the Court in the landmark school prayer case of <u>Engel v. Vitale</u> continued:

14

>These men knew that the First Amendment, which tried to put an
>end to governmental control of religion and of prayer, was not
>written to destroy either.  They knew rather that it was written to
>quiet well-justified fears which nearly all of them felt arising out of
>an awareness that governments of the past had shackled men's
>tongues to make them speak only the religious thoughts that
>government wanted them to speak and to pray only to the God that
>government wanted them to pray to.  It is neither sacrilegious nor
>antireligious to say that each separate government in this country
>should stay out of the business of writing or sanctioning official
>prayers and leave that purely religious function to the people
>themselves and to those the people choose to look to for religious
>guidance.

370 U.S. at 435.  These words are as true today as they were in 1962.

"The Establishment Clause thus stands as an expression of principle on the part of the

Founders of our Constitution that religion is too personal, too sacred, too holy, to permit its

'unhallowed perversion'" by government.  Id. at 431-32 (quoting Memorial and Remonstrance

against Religious Assessments, II Writings of James Madison 183, 187).  Indeed, viewed in this

light, the preliminary injunction in this case is necessary to protect, rather than abjure, religious

freedom.

Following the lead of the Fourth Circuit in Joyner, the court will not "set forth some sort

of template for an ideal legislative prayer policy."  653 F.3d at 354.

>After all . . . "too much judicial fine-tuning of legislative prayer
>policies risks unwarranted interference in the internal operations of
>a coordinate branch."  The bar for [Pittsylvania] County is hardly a
>high one.  Public institutions throughout this country manage to
>regularly commence proceedings with invocations that provide all
>the salutary benefits of legislative prayer without the divisive
>drawbacks of sectarianism.  And religious leaders throughout this
>country have offered moving prayers on multitudinous occasions
>that have managed not to hurt the adherents of different faiths.  In
>the end, the constitutional standard asks of the County no more
>than what numerous public and governmental entities already
>meet.

Id. (internal citations omitted).

15

Therefore, consistent with controlling Fourth Circuit precedent, the preliminary injunction in this case is narrowly crafted to respect the religious freedom and constitutional rights of all.

Entered:  February 3, 2012

*/s/ Michael F. Urbanski*
Michael F. Urbanski
United States District Judge