THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| BARBARA HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:11-cv-00043 |
| PITTSYLVANIA COUNTY, VIRGINIA and | ) |
| BOARD OF SUPERVISORS OF | ) |
| PITTSYLVANIA COUNTY, VIRGINIA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiff hereby submits, pursuant to Rule 54 of the local rules of this Court, this brief in support of her motion for attorneys' fees and expenses incurred in litigating this case.

**I.     NATURE OF THE CASE**

This case was brought to redress the defendants' practice of opening Board of Supervisors meetings with Christian prayer in violation of the Establishment Clause of the First Amendment.  On February 3, 2012, this Court granted plaintiff's motion for a preliminary injunction, and denied defendants' motion to dismiss based on standing, legislative immunity and failure to state a claim.  On March 27, 2013, the Court denied the defendants' motion for summary judgment, granted the plaintiff's motion for summary judgment, and permanently enjoined the defendants from its practice of sectarian prayer.  Because this lawsuit successfully vindicated the constitutional rights of the plaintiff, she now requests, pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. § 1988, an award of the attorneys' fees and expenses incurred in obtaining this result.

## II. ENTITLEMENT TO ATTORNEYS' FEES

### A. Prevailing Party Status

42 U.S.C. § 1988 entitles the Plaintiff, as the prevailing party, to a reasonable attorney fee award. *See, e.g., Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002); *Daly v. Hill*, 790 F.2d 1071, 1076-77 (4th Cir. 1986). The relevant portion of 42 U.S.C. § 1988 is as follows:

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The Supreme Court has held that plaintiffs are prevailing parties if "they succeed[] on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). That is, the plaintiff must "receive at least some relief on the merits of his claim." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).

This standard has undoubtedly been met, as the declaratory and injunctive relief that the plaintiff requested was granted: the defendant's practice of sectarian invocations was declared unconstitutional and enjoined. *See* Compl., Req. for Relief, ¶¶ A & B.

### B. Calculation of Fees

A fee award under § 1988 is to be calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, with the amount being known as the "lodestar." *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley*, 461 U.S. at 433-34; *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See, e.g., Trimper v. City of Norfolk*, 846 F. Supp.

1295, 1304 (E.D. Va. 1994). The relevant legal community is generally that in which the district court sits. *See Blum*, 465 U.S. 886 (1984); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994). A private market rate is utilized regardless of whether the plaintiff is represented by private or non-profit counsel. *See Blum*, 465 U.S. at 895.

In making the lodestar determination, courts are guided by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978): (1) the time and labor expended; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) the attorney's expectations at the outset of litigation (i.e., whether the fee is fixed or contingent); (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 640 (4th Cir. 1998); *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). The Plaintiff is seeking compensation for the time spent by her attorneys at rates ranging from $150 to $400 per hour. The requested amounts are reasonable in light of the *Johnson* factors, all of which are discussed below:

### 1. Time and Labor Expended

Three attorneys expended a total of 172.8 hours in successfully litigating this case.[1] All of the work undertaken is detailed on the attached time records (*see* Exs. 1-3 and attachments

---

[1] All attorneys who contribute their service to a case are to be awarded reasonable

3

thereto). These hours were reasonable, necessary, and consistent with the requirements of this case. Counsel submits that this time should be reimbursed in full.[2]

### 2. The Novelty and Difficulty of the Case

"[T]he Establishment Clause presents especially difficult questions of interpretation and application." *Mueller v. Allen*, 463 U.S. 388, 392 (1983). The United States Supreme Court, together with the lower courts, have uniformly found Establishment Clause cases to be among the most vexing of our time. *See, e.g., Tilton v. Richardson*, 403 U.S. 672, 678 (1971) ("candor compels the acknowledgment that we can only dimly perceive the boundaries of permissible government activity in this sensitive area of constitutional adjudication"); *Murray v. City of Austin, Tex.*, 947 F.2d 147, 156 (5th Cir. 1991) (noting that Establishment Clause litigation is a "difficult area [that is] dominated by subtle nuances"); *Van Zandt v. Thompson*, 839 F.2d 1215, 1218 (7th Cir. 1988) (referring to the "tangle of establishment clause doctrine"); *First Unitarian Church v. Salt Lake City Corp.*, 146 F. Supp. 2d at 1155, 1174 (D. Utah 2001) ("Establishment Clause case law is notoriously confused and difficult"), *rev'd on other grounds*, 308 F.3d 1114

---

attorneys' fees so long as the award "is . . . justified by the contributions of each attorney." *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994). In this instance, as the declarations of counsel make plain, the work was divided among counsel to ensure that no unnecessary duplication took place. *See* Ex. 1, Glenberg Decl. at ¶ 6; Ex. 2, Feibelman Decl. at ¶ 4; Ex. 3, Fitzpatrick Decl. at ¶ 3.

[2]The hours include time spent in preparing this fee motion, which is properly compensable in a §1988 fee award. *See, e.g., Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986); *American Canoe Ass'n, Inc. v. U.S. Envtl. Protection Agency*, 138 F. Supp. 2d 722, 746 (E.D. Va. 2001). Counsel for plaintiffs endeavored to avoid these additional fees by sending an email to defendants' attorney suggesting that the parties settle the matter of fees and costs without litigation. No response was received to this email.
Furthermore, in an exercise of billing judgment, the plaintiff is not seeking compensation for administrative work undertaken in the pursuance of this case, as well as considerable time spent on mediation by both counsel and a law student. (*see* Ex. 1, Glenberg Decl. at ¶¶ 8-9.)

(10th Cir. Oct. 9, `2002); *Herdahl v. Pontotoc County Sch. Dist.*, 964 F. Supp. 1113, 1119 (N.D. Miss. 1997) ("Establishment Clause law is a specialized field" that "require[s] greater than average skill").

In the present case, although there is Fourth Circuit precedent on the issue of sectarian prayers at government meetings, plaintiff's attorneys had to spend considerable time responding to novel defenses raised by the defendants, such as the notion that plaintiffs' prior unfriendly history with the board deprived her of standing, as well as defendants' extraordinary suggestions that judges are not competent to determine whether prayers are "sectarian," and that the Court should simply ignore the case law on the issue. *See* Deft's' Mem. Supp. Mot. for Summ. J.; Def'ts' Mem. Opp. Pl's Mot. for Summ. J.

### 3. *Skill Required to Perform the Services Properly*

Because this case raised novel and challenging issues, substantial skill was required to litigate it well. "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. Plaintiff's counsel believe that their skills enabled them to efficiently and successfully prosecute this litigation.

### 4. *Experience, Reputation, and Ability of the Attorneys*

The experience, reputation, and abilities of the three attorneys who worked on this case are described in the attached declarations. Rebecca Glenberg, who took greatest responsibility for the management of this case, is the Legal Director of the American Civil Liberties Union of Virginia. She has over fifteen years of legal experience, having spent over thirteen of those years in her current position. *See* Ex. 1, Glenberg Decl. at ¶ 1. In the course of her career, she has litigated before Virginia state and federal courts and has gained extensive knowledge of civil

liberties issues. She has been involved in most of the major Establishment Clause cases in Virginia since 2000. *See id.* at ¶¶ 4-5.

Ms. Glenberg shared responsibility for litigating this case with Frank Feibelman and Thomas Fitzpatrick. Mr. Feibelman is an attorney with over forty years in private practice. (Ex. 2, Feibelman Decl. at ¶ 2.) Mr. Fitzpatrick is a former legal fellow of the ACLU of Virginia who spent two years practicing solely in the area of civil liberties.

### 5. *Customary Fees*

"The customary fee for similar work in the community should be considered." *Johnson*, 488 F.2d at 718. Plaintiff has submitted with this Motion declarations of local attorneys Steven Rosenfield, Paul Beers, Melvin Williams, and Jonathan Rogers. *See* Exs. 4-7. These declarations indicate that the rates charged by plaintiffs' attorneys are commensurate with those charged by attorneys of similar skill and experience in the Western District of Virginia.

### 6. *Awards in Similar Cases*

Plaintiff has found few recent cases from the Western District of Virginia that detail attorneys' hourly rates. In a recent consumer rights case, Judge Moon awarded one attorney fees at a rate of $225 per hour, and a "more experienced attorney" a rate of $375 per hour. *Kindred v. McLeod*, 2010 WL 4814360, *12 n.14 (Nov. 19, 2010). Another 2010 consumer law case yielded a rate of $375 per hour. *Naill v. Lincoln Mortg., LLC,* 2010 WL 2292133, *3 (W.D.Va.,2010). Since neither case details the experience or qualifications of the attorneys involved, it is difficult to determine the degree to which they are commensurate to those requested here.

More cases regarding attorney fee rates in civil rights cases are available in the Eastern District of Virginia. In *Lux v. Judd*, 868 F.Supp.2d 519 (E.D. Va. 2012), the court awarded fees to the successful challengers of a ballot access statute. The court found that a rate of $400 per hour was "reasonable and within the prevailing market rates for comparable cases in Virginia for attorneys with comparable skill, expertise, and reputation" for local counsel who had been practicing since 1993 and had "assisted [plaintiff]'s out-of-state counsel in the navigation of this Court's procedures and practices." 868 F.Supp.2d at 532. In a challenge to a registrar's refusal to permit an organization to inspect or photocopy rejected voter registration records, the court awarded attorney's fees ranging from $225 to $400 per hour. *Project Vote/Voting for America, Inc. v. Long*, 887 F.Supp.2d 704, 713 (E.D.Va. 2012). In a consumer law case, the court awarded a rate of $425 per hour to an attorney with "many years of specialized experience pertaining to consumer law." *Randle v. H&P Capital, Inc.*, 2010 WL 2944907, *8 (E.D. Va. July 21, 2010).

The rates commanded in the Eastern District are relevant. As Magistrate Judge Crigler has explained:

> [T]he Charlottesville Division of the Western District is served by lawyers from all over the region and Commonwealth of Virginia, and, of late, from over much of the country. Law firms from Richmond, Norfolk, Northern Virginia, Washington, D.C. and other metropolitan areas in Virginia routinely appear in civil matters in this and other divisions of the Western District. The undersigned believes that the defendants labor under a much more provincial concept of the Charlottesville market than reality demonstrates.

*Rust v. Electrical Workers Local No. 26 Pension Trust Fund*, 2012 WL 2196050, *11 (W.D.Va. 2012), citing *Quesenberry v. Volvo Group North America,* 2010 WL 2836201, *6 (W.D.Va. July 20, 2010)³.

Additionally, "where legal services of like quality are not available in the locality the services are rendered and the party choosing an attorney from elsewhere acted reasonably in making that choice, the court can look beyond even the geographic reach of the court to assess reasonable hourly rates." *Rust* at *11, citing *National Wildlife Federation v. Hanson,* 859 F.2d 313, 318 (4th Cir.1988). In this case the American Civil Liberties Union is known nationally for its prosecution of Establishment Clause cases, and Ms. Glenberg has been involved in most of the major Establishment Clause cases in Virginia for the past thirteen years. In light of this reputation (as well as the undesirability of Establishment Clause cases in the Western District of Virginia, described below), it was reasonable for the plaintiff to seek representation from the ACLU of Virginia.

### 7. *Time Limitations Imposed by the Client or the Circumstances and Preclusion of Other Employment*

The work undertaken by plaintiff's counsel in this case necessarily came at the expense of working on or developing other cases. *See* Ex. 1, Glenberg Decl. at ¶ 12.

### 8. *Undesirability of the Case*

Courts have repeatedly recognized that civil rights litigation is often perceived as undesirable, and that the compensation to a plaintiff's attorney should take that undesirability into account. "Civil rights attorneys face hardships in their communities because of their desire

---

3 Magistrate Judge Crigler's Report and Recommendation was later withdrawn due to a settlement between the parties.

to help the civil rights litigant. . . . Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries." *Johnson*, 422 F.2d at 718. In the Western District of Virginia, Establishment Clause cases are particularly unpopular and few local attorneys are willing to take them on. *See* Ex. 4, Rosenfield Decl. ¶ 6; Ex. 6, Williams Decl. ¶ 6; Ex. 7, Rogers Decl. ¶ 6.

As the Court is aware, in this particular case, the plaintiff and her attorneys were subject of much opprobrium within the community due to their challenge of defendants' sectarian prayers. One email correspondent to the ACLU of Virginia wrote, "If you don't like prayer leave Virginia you bunch of jerks. . . . I bet if members wore id's saying they were with the aclu daily beating would be given to them." Another wrote, "You cater to about 15% of the people that don't know how to pour pee out of a boot with the directions on the heel, and dont' (sic) listen to the 85% majority." A caller to the ACLU of Virginia said that Ms. Glenberg would "burn in hell," and another said she should be fired and "put in the dump." A third caller called the ACLU's office manager names such as "devil-worshipper." In a letter to the editor of the Danville Register & Bee, one person wrote, "All the ACLU is doing is trying to justify the jobs of hundreds of attorneys; they don't give a hoot about what happens in your life as long as the checks keep coming." Another wrote, "If there was ever a group of lawyers that needs to be run out of this country, it's the ACLU." On the Register & Bee's comment section, a commenter wrote, "I'm thinking the aclu should simply stay the he! (sic) out of danville if they have such a problem with the way we do things. . . . let the aclu and the busybodies that represent it go to a country that isn't supposed to be free. . ONE NATION UNDER GOD, not one nation under a bunch of clones that are no better than racist pigs." Another wrote, "The aclu can do what ever it

wants to but when judgement (sic) day come (sic) they have to answer to our LORD Jesus Christ. He says that the ones that don't believe in him shall go in the PIT!!!!!!!" A third wrote, "The American people need to rise up and dissemble the ACLU. they have been a thorn in our side for way too long..They are our enemy." According to press reports, a local attorney who offered to defend the Board's actions in a lawsuit wrote that opposition to the Board's Christian prayers was an "assault by the devil." (*See* Pl.'s Mem. Supp. Mot. to Proceed Using Pseudonym at 8-9 and exhibits thereto.)

### 9. *Nature and Length of Relationship with Client*

Plaintiff Barbara Hudson had no prior relationship with any of her attorneys.

### 10. *Fixed or Contingent Fee*

The written agreement between plaintiff and her attorneys provide that she will not be charged any fee and that the ACLU of Virginia will advance all expenses. The agreements also provide that the ACLU of Virginia will seek any statutory fees and expenses to which they might be entitled.

### 11. *The Amount Involved and the Results Obtained*

The plaintiff's total claim for attorneys' fees and expenses comes to $59,679.92. This is a reasonable amount given for litigation lasting approximately a year and a half. Furthermore, the plaintiff achieved the full extent of her requested relief. *See* Compl., Req. for Relief, at ¶ A & B.

In sum, because all of the work undertaken by Plaintiff's counsel was reasonably necessary for the litigation of this case, and because the requested hourly rates are amply supported by both case law and declarations, the Plaintiff's motion should be granted in full.

### III. EXPENSES

As part of the attorney fee award pursuant to §1988, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under §1988." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). In this case, the ACLU of Virginia incurred $2,949.92 in expenses as set forth in Attachement B to Exhibit 1.

### IV. CONCLUSION

The Plaintiff's request can be summarized as follows:

| Attorney Name | Hours Spent | Hourly Rate | Total |
|---|---|---|---|
| Rebecca Glenberg | 126.8 | 350 | 44,380.00 |
| Frank Feibelman | 21.8 | 400 | 8,720.00 |
| Thomas Fitzpatrick | 24.2 | 150 | 3,630.00 |
| Expenses | | | 2,949.92 |
| GRAND TOTAL: | | | **$59,679.92** |

Plaintiff submits that these attorneys' fees and expenses should be awarded in full.

Dated: April 5, 2013

Respectfully submitted,

BARBARA HUDSON

_____/s/_____

11

Rebecca K. Glenberg (VSB #44099)
Thomas O. Fitzpatrick (VSB #80364)
American Civil Liberties Union of Virginia
      Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org
tfitzpatrick@acluva.org

Frank M. Feibelman (VSB #13877)
Cooperating Attorney for the ACLU of Virginia
5206 Markel Rd., Suite 102
Richmond, Virginia 23230
(804) 355-1300
FAX: (804) 355-4684
frank@feibelman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of April, 2013, I filed the foregoing document with the clerk of court using the CM/ECF system, which will send copies to the following:

>William M. Stanley, Esquire
>Stanley & Stanley, LLC
>13508 Booker T. Washington Highway
>Moneta, VA 24121
>bill.stanley@stanleyandstanleylaw.com

>/s/
>Rebecca K. Glenberg (VSB #44099)
>American Civil Liberties Union of Virginia
>    Foundation, Inc.
>530 E. Main Street, Suite 310
>Richmond, Virginia 23219
>(804) 644-8080
>Fax: (804) 649-2733
>rglenberg@acluva.org