IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BARBARA HUDSON | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 4:11-CV-43 |
| | ) | |
| v. | ) | |
| | ) | |
| PITTSYLVANIA COUNTY, VIRGINIA, | ) | By: Hon. Robert S. Ballou |
| ET AL., | ) | United States Magistrate Judge |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to me by order dated April 29, 2013 (Dkt. No. 91), pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and (C), for a Report and Recommendation on the disposition of Plaintiff's Motion for Attorneys' Fees and Expenses (Dkt. No. 86). For the reasons stated herein, I **RECOMMEND** that Plaintiff's Motion for Attorneys' Fees and Expenses be **GRANTED**, and that plaintiff be awarded Fifty Three Thousand Two Hundred Twenty Nine and 92/100 Dollars ($53,229.92) in attorneys' fees and expenses.

## I.

Plaintiff Barbara Hudson ("Hudson") filed this Establishment Clause lawsuit under 42 U.S.C. § 1983, challenging the practice of the Board of Supervisors of Pittsylvania County, Virginia ("the Board") of regularly opening its meetings with Christian prayer. Defendants vigorously contested Hudson's claims, initially filing a motion to dismiss the complaint. On February 3, 2012, the court denied Defendants' motion to dismiss, and granted Hudson's motion for preliminary injunction, precluding the Board from routinely opening its meetings with

1

sectarian prayers during the pendency of the action. The parties engaged in significant discovery, including the exchange of written discovery requests and numerous depositions. Thereafter, the parties filed cross-motions for summary judgment. Following the hearing on the motions for summary judgment, the presiding district court judge referred the matter to mediation. Ultimately, the parties were unable to achieve final agreement on terms to settle the matter. On March 27, 2013, the court denied Defendants' motion for summary judgment, granted Hudson's motion for summary judgment, and permanently enjoined the Board from its practice of opening its meetings with sectarian prayer. The court dismissed the case, but retained jurisdiction for purposes of enforcement of the permanent injunction, as well as consideration of any motion by Hudson for attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

On April 5, 2013, Hudson filed a Motion for Attorneys' Fees and Expenses, pursuant to Rule 54 of the Federal Rules of Civil Procedure, and 42 U.S.C. § 1988, seeking an award of attorneys' fees and expenses in the amount of $59,679.92. Defendants filed a brief in opposition to Hudson's motion, conceding that Hudson was entitled to an attorneys' fee award as a "prevailing party" under 42 U.S.C. § 1988, but asking that the court award a reduced amount under the lodestar analysis. On April 25, 2013, Hudson filed a reply brief in support of her motion, and amended the total amount sought to $60,404.92.

**II.**

The Civil Rights Attorney's Fees Awards Act of 1976 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The Supreme Court has directed that the purpose of §1988 is to ensure meaningful and effective access to the judicial system for persons with civil rights grievances, and thus, a successful plaintiff "should ordinarily recover an attorney's fee unless special

2

circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L.E.2d 40 (1983). To qualify as a "prevailing party," the plaintiff must "obtain at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L.E.2d 494 (1992).

Here, the parties agree that Hudson is the "prevailing party" as the term is used in 42 U.S.C. § 1988. Hudson prevailed on every claim that she asserted, and thus should be "fully compensated" for her legal expenses. Rum Creek Coal Sales, Inc v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994); see also Hensley, 461 U.S. at 435, 103 S. Ct. at 1940. The defendants take issue, however, with various aspects of Hudson's fee request, including: (1) the rate charged by Frank Feibelman; (2) the number of hours sought by each attorney; and (3) specific items of expenses. Hudson has the burden of establishing that her requested amount of attorneys' fees is reasonable. McAfee v. Boczar, 906 F. Supp. 2d 484, 489 (E.D. Va. 2012).

An award of attorney's fees under § 1988 is calculated using the lodestar method to determine the reasonableness of the fee award. See Grissom v. Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008). Historically, the Fourth Circuit calculated the lodestar figure by multiplying the number of reasonable hours expended by a reasonable rate. Id. Courts would evaluate the reasonableness of the hours sought on fee petitions under the lodestar method using the twelve factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th. Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978): (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8)

the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Robinson v. Equifax Info. Servs._, 560 F.3d 235, 243–44 (4th Cir. 2009); Barber, 577 F.2d at 226 n. 28 (adopting the twelve factors set forth in Johnson, 488 F.2d at 717-19).

The Supreme Court in Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S. Ct. 1662, 176 L.Ed.2d 494 (2010), criticized use of the Johnson factors as the primary test to determine a lodestar figure and "relegated the Johnson approach to the sidelines in fee analysis." McAfee, 906 F. Supp. 2d at 491. The Supreme Court noted that the Johnson approach gave very little guidance on how to set fees, and "placed unlimited discretion in trial judges and produced disparate results." Perdue, 130 S. Ct. at 1672 (internal quotation marks omitted)(citation omitted). The primary question addressed in Perdue was whether the trial court properly applied an escalator to the fee award after it determined the lodestar figure. In Perdue, the Supreme Court endorsed the lodestar method of fee setting as the preferred mode of fee analysis under federal law, and made clear that the lodestar fee, if properly calculated, enjoys a strong presumption of reasonableness from which departures will be rarely permitted, and then only in extraordinary circumstances. Perdue, 130 S. Ct. at 1677, 1678. Importantly, the Court did not expressly state that a court should not use the Johnson factors to determine a lodestar figure.

Despite the Supreme Court's criticism of the Johnson approach, it provided little direction on the proper means to calculate a lodestar figure or what factors should guide the court's decision in determining either a reasonable hourly rate or reasonable number of total hours. Since Perdue, federal courts have continued to consider the Johnson factors for guidance

4

when evaluating petitions for attorneys' fees under the lodestar method. See, e.g., Jackson v. Estelle's Place, LLC, 391 F. App'x. 239, 243 (4th Cir. 2010); McClain v. Lufkin Indus., Inc., 649 F.3d 374, 380–81 (5th Cir. 2011); Spencer v. Cent. Servs., LLC, Civil No. CCB-10-03469, 2012 WL 142978 (D. Md. Jan. 13, 2012); Trustees of Local 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 590-91(E.D.N.Y. 2011). Given the above framework, I find that the Johnson factors, when properly weighed, will provide direction to the court in its determination of the reasonable hourly rate and total hours billed in determining a proper fee award in this case.

### A. Rate

The reasonable hourly rate for purposes of the lodestar figure is generally the prevailing market rate for comparable services in the community in which the services were rendered. In re Mullins, 1996 WL 148527, *3 (W.D. Va. Feb. 12, 1996). The determination of the reasonable hourly rate is a fact intensive exercise requiring the fee applicant to produce "specific evidence" of prevailing market rates in the relevant community for similar services in similar circumstances. Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). The relevant legal community is generally that in which the district court sits. Rum Creek Coal Sales, Inc., 31 F.3d at 179.

Hudson's legal counsel consisted of three attorneys: Rebecca Glenberg, Frank Feibelman and Thomas Fitzpatrick. Hudson's counsel submitted affidavits setting forth their hourly rates and individual experience and qualifications, and certifying that their billing rates were reasonable in light of the prevailing rates of attorneys of comparable skill, experience and reputation performing similar services. Dkt. Nos. 87-1, 87-2, 87-7. Hudson's counsel also submitted declarations from four local attorneys in support of their assertions that their rates are reasonable. Dkt. Nos. 87-3, 87-4, 87-5, 87-6.

5

Defendants do not object to Ms. Glenberg's billing rate of $350.00 per hour or Mr. Fitzpatrick's billing rate of $150.00 per hour. I find that the affidavits and declarations submitted in support of Ms. Glenberg's and Mr. Fitzpatrick's hourly rates satisfy their burden of establishing reasonableness.

Defendants do object to Mr. Feibelman's billing rate of $400.00 an hour, noting his lack of particularized experience in constitutional rights cases. I accept Mr. Feibelman's representation that he regularly charges $400.00 per hour for his legal services in Richmond; however, that fact is not conclusive. Rum Creek Coal Sales, Inc., 31 F.3d at 175; Chadwell v. Lee County School Bd., 535 F. Supp. 2d 586, 603-604 (W.D. Va. 2008). Based upon my knowledge of the legal billing rates charged in the Danville area, a $400.00 hourly billing rate is unlikely to be considered reasonable in that community. Further, there is no evidence before the court as to why it is equitable for Mr. Feibelman to charge a higher rate than Ms. Glenberg, who has considerable experience litigating Establishment Clause and other civil rights cases. I do not question Mr. Feibelman's reputation and ability as an attorney, but I do not find it appropriate that he charge a higher billing rate than Ms. Glenberg, given her extensive experience in handling cases of this nature. Accordingly, I recommend reducing Mr. Feibelman's billing rate to $350.00 per hour to be commensurate with Ms. Glenberg's billing rate in this matter. With that adjustment to Mr. Feibelman's fee, I am satisfied that the hourly rates requested by Hudson's counsel appropriately reflect each attorney's relative seniority and expertise in the field of civil rights litigation, and are reasonable given the prevailing market rate for comparable services in the Danville community.

B. **Hours**

I must next determine the number of hours reasonably expended by Hudson's counsel. Rum Creek Coal Sales, Inc., 31 F.3d at 174. Although a plaintiff who obtains full relief should receive a "fully compensatory fee," the number of hours must be adjusted to delete duplicative or unrelated hours. Id. at 174-75 (citing Hensley, 461 U.S. at 437, 103 S. Ct. at 1941).

"In ascertaining which hours reported were reasonably expended, and thus billable, the court must examine the total number of hours reported by each lawyer, the hours counsel allotted to specific tasks, whether those tasks would normally be billed to a paying client, and the potential duplication of services, particularly where multiple lawyers are involved." Spell v. McDaniel (Spell I), 616 F. Supp. 1069, 1085 (E.D.N.C. 1985) affirmed in part, vacated in part, 824 F.2d 1380 (4th Cir. 1987)(citations omitted). These determinations must be made in the context of the specific case at bar; considering the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the tactics of the opponent. Wabasha v. Solem, 580 F. Supp. 448, 458 (D.S.D. 1984). The Court must also "weigh the hours claim[ed] against [its] own knowledge, experience, and expertise of the time required to complete similar activities." Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974). In sum, the Court must carefully scrutinize the total number of hours reported by the prevailing party to arrive at the number of hours that can fairly and reasonably be charged to the losing party.

The fee applicant bears the burden of documenting and supporting the number of hours expended in the litigation, and the fee application should be supported by "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1327 (D.C.

Cir. 1982). In this case, Hudson's counsel have each provided a chart which identifies the timekeeper, the date on which the work was performed, a brief description of the work performed, and the amount of time expended. Dkt. Nos. 87-1, 87-2, 87-7. Defendants make several objections to the number of hours claimed by Hudson's counsel, which I address in turn below.

**1. Motion to Proceed Using Pseudonym**

Defendants ask the court to disallow all fees relating to Hudson's motion to proceed using the pseudonym "Jane Doe," on which she did not prevail. This is the only motion on which plaintiff did not prevail in this case. Hudson filed this action as a Jane Doe complaint and sought to keep her name from the public docket for fear of public back lash towards her because of the nature of this case. Defendants contested this motion and the parties expended considerable energy and legal time briefing and arguing the issue. Ultimately, the district court denied Hudson's motion and directed that the action proceed in her real name.

A plaintiff is a "prevailing party" for purposes of § 1988 if she succeeds on "any significant issue…which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433, 103 S. Ct. at 1939. It is not necessary that a plaintiff succeed on all of the significant issues, or that the Court award all of the monetary, declaratory or injunctive relief sought in the complaint. Spell I, 616 F. Supp. at 1081. Rather, § 1988 "rewards a plaintiff who ultimately prevails-who wins the war-without deducting for lost battles along the way." Buffington v. Baltimore County, Md. 913 F.2d 113, 128 (4th Cir. 1990)(citing Spell v. McDaniel (Spell II), 824 F.2d 1380 (4th Cir. 1987)) As the Court stated in Spell I:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good

8

faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters.

616 F. Supp. 1069, 1081(citing Hensley, 461 U.S. at 435, 103 S. Ct. at 1940).

In this case, Hudson prevailed on all significant issues, and, pursuant to Hensley, Hudson's attorneys should recover a fully compensatory fee. Accordingly, I do not recommend reducing Hudson's compensable hours because she failed to prevail against Defendants on a minor motion.

**2. Duplication of Work**

Defendants assert that it was unreasonable for Hudson to use a team of three lawyers in this case, and that many of the hours billed constitute duplicative work. Specifically, Defendants argue that the court should disallow all time entries involving conferencing among the attorneys, reviewing other attorneys' work, and preparing for and attending hearings in which all three attorneys did not participate. Defendants further argue that the hours billed by Mr. Feibelman and Mr. Fitzpatrick are duplicative in their entirety, as they consisted of reviewing Ms. Glenberg's work, and traveling to hearings in which they did not participate.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission… 'Hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority.'" Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980))(emphasis in original).

However, "there is nothing inherently unreasonable about a client having multiple attorneys," especially in a complex civil rights case. McAfee, 906 F. Supp. 2d at 501(quoting

Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988))(internal quotation marks omitted); see also Spell I, 616 F. Supp. at 1093. When reviewing the hours sought, the court must focus on the reasonableness of the division of responsibility between counsel. Reduction of hours is warranted only if counsel unreasonably duplicate each other's work. Spell I, 616 F. Supp. at 1093. Awards for time expended by two or more counsel are proper, provided they reflect the distinct contribution of each lawyer to the case. Id. In this case, I find that Hudson's counsel generally divided the work to be performed in such a manner as to avoid duplication.

Hudson's counsel seek compensation for a total of 175.3 hours, the large majority of which was billed by Ms. Glenberg.[1] Ms. Glenberg served as lead counsel throughout the litigation, and was primarily responsible for legal research, preparation of pleadings and briefs, conducting discovery, and arguing at hearings. Defendants state a number of objections to the hours claimed by Ms. Glenberg, generally asserting that she took longer to perform tasks than necessary. Ms. Glenberg provided a detailed billing sheet, as well as specific explanations for the hours to which Defendants object. Defendants provide no substantive basis for the court to question Ms. Glenberg's billing entries and declarations. Having reviewed Ms. Glenberg's fee request in detail, and bearing in mind that §1988 contemplates that a successful plaintiff will be awarded a full attorneys' fee, I find the hours billed by Ms. Glenberg to be reasonable, especially in light of Hudson's successful result.

Defendants also object to the hours billed by Mr. Fitzpatrick, claiming that his time entries are duplicative and unreasonable. Mr. Fitzpatrick was a legal fellow with the American Civil Liberties Union of Virginia during his work on this case. Mr. Fitzpatrick billed a total of

---

[1] Hudson's counsel excluded from their timesheets time spent on clerical work and traveling to depositions, as well as considerable time spent attempting to mediate the case. Dkt No. 87-3.

24.2 hours, which consisted of preparing exhibits for briefs, reviewing pleadings, attending court hearings, meeting with Ms. Hudson, and traveling to and taking a deposition. Dkt. No. 87-7. I will address Mr. Fitzpatrick's travel and attendance at court hearings separately below. Having reviewed Mr. Fitzpatrick's non-travel related billing entries, I find that the work performed by Mr. Fitzpatrick was non-duplicative, properly limited, and of the sort to be undertaken by a more junior lawyer.

Defendants also object to Mr. Feibelman's fees in their entirety, asserting that his billing entries are duplicative of Ms. Glenberg's, and thus unnecessary. Mr. Feibelman billed a total of 21.8 hours: 14.3 hours to travel to and attend hearings, and 7.5 hours to review and edit pleadings. Dkt. No. 87-2. I will discuss Mr. Feibelman's travel and attendance at hearings below. With regard to Mr. Feibelman's remaining hours, I find that the time spent by Mr. Feibelman reviewing and editing the pleadings was reasonable. Ms. Glenberg states that Mr. Feibelman's input was "essential" to the litigation; and indeed, the pleadings in this matter were pivotal to Ms. Hudson's successful result where the court awarded Hudson a preliminary injunction and granted summary judgment based in large part upon the pleadings filed and arguments presented in the briefs of the parties. Dkt. No. 89. Relying on co-counsel to review and edit pleadings is the type of division of responsibility that reflects each counsel's distinct contribution to the case, and is not impermissible "duplication" that must be avoided. See McAfee, 906 F. Supp. 2d at 501.

With regard to Mr. Feibelman and Mr. Fitzpatrick's travel to and attendance at court hearings in this matter, I find that those billing entries constitute duplication of Ms. Glenberg's work and should not be compensated. Although it is not *per se* unreasonable for a client to be represented by multiple attorneys in court proceedings, when approving fees for those attorneys,

courts require a "distinct contribution by their presence or participation." See, e.g., Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1360 (4th Cir. 1995) (upholding the district court's decision to exclude hours spent by "an attorney in attending trial when that attorney examined no witnesses at trial and had 'no active participation' in the trial" as well as the hours spent by a paralegal engaged in "jury observation."); Goodwin v. Metts, 973 F.2d 378, 383 (4th Cir. 1992) (upholding a reduction in attorney's fees for "the use of three to four lawyers in the action when one or two would have sufficed"); Trimper v. City of Norfolk, 58 F.3d 68, 76–77 (4th Cir. 1995) ("Properly reducing allowable hours because of overstaffing... falls soundly within the district court's proper discretion in determining an attorney's fee award."); Daly v. Hill, 790 F. 2d 1071, 1080 ( 4th Cir. 1986) (reducing request for 47 hours expended in depositions to 25 hours when another attorney was primarily responsible for the depositions).

In this case, I find that Mr. Feibelman and Mr. Fitzpatrick did not make a distinct contribution by their presence at the court hearings. Mr. Feibelman and Mr. Fitzpatrick traveled for over five hours to attend hearings in which they did not speak or actively participate. Although Ms. Glenberg asserts that her co-counsel provided input while sitting at counsel table, from the court's perspective, Ms. Glenberg was the only attorney who participated in the hearings. Accordingly, a proper degree of billing judgment requires that the Defendants are not charged for Mr. Feibelman and Mr. Fitzpatrick's attendance at the hearings. Thus, I find that Mr. Feibelman's hours should be reduced by 14.3 hours and Mr. Fitzpatrick's should be reduced by 7.2 hours.

### 3. Travel

Defendants argue that the claim by Hudson's attorneys for travel is excessive. As I've previously deducted the hours claimed by Mr. Feibelman and Mr. Fitzpatrick for travel, those

amounts are no longer at issue. With respect to Ms. Glenberg's travel time, Defendants concede that it is reasonable to expect "some compensation" for her travel, but argue that such compensation should be at a rate less than her $350.00 billing rate. Dkt. 88. Defendants provide no legal or factual basis for this assertion, aside from stating that it was "merely time spent in the car." Dkt. No. 88. Based upon my knowledge and experience, it is reasonable for attorneys to bill their standard billing rate for necessary travel time to and from court hearings. Consequently, I will not reduce Ms. Glenberg's billing rate for the hours spent on travel.[2]

### 4. Expenses

Defendants also object to Hudson's bill for legal expenses, asserting that: 1) paying $330.00 for service of witness deposition subpoenas is too high; 2) counsel should not claim mileage in addition to claiming an hourly travel rate; and 3) Ms. Glenberg's two night hotel charge of $349.27 in Roanoke was unreasonably expensive. "The great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." Daly, 790 F.2d at 1084. Hudson claims total legal expenses of $2,799.92 for litigation that lasted approximately a year and a half.[3] On its face, the figure appears to be quite modest. While it may have been possible to obtain service of witness subpoenas and a two night hotel room in Roanoke for less money, the amounts sought here are not unreasonable. With regard to mileage, the Fourth Circuit stated in Daly, "[i]t is customary for attorneys to bill clients for duplicating expenses, attorney travel and other necessary litigation expenses in addition to a regular hourly rate." 790 F.2d at 1087. Accordingly, I do not recommend reducing the amount sought by Hudson as reimbursement for legal expenses.

---

[2] Ms. Glenberg does not seek reimbursement for time spent traveling to and from witness depositions. Dkt. No. 87-3.
[3] Ms. Glenberg amended the amount sought for witness subpoenas in the reply brief to $180.00, noting that the original $300.00 amount was an error. Dkt. No. 89.

C. **Lodestar Calculation**

In applying the lodestar analysis set forth above, I have considered all of the Johnson factors, most of which are subsumed in the rate and hour analysis. This includes the fact that Hudson's counsel litigated this case with the risk of receiving no compensation, the successful result obtained, the public hostility directed at Hudson and her attorneys, and attorney fee awards that have been granted in similar cases. With the rate and hour modifications set forth above, the lodestar calculation yields the following amount of attorneys' fees and expenses in this matter:

| Attorney Name | Hours | Rate | Total: |
|---|---|---|---|
| Rebecca Glenberg | 129.3 | $350.00 | $ 45,255.00 |
| Frank Feibelman | 7.5 | $350.00 | $ 2,625.00 |
| Thomas Fitzpatrick | 17 | $150.00 | $ 2,550.00 |
| Expenses | | | $ 2,799.92 |
| | | **Total:** | **$ 53,229.92** |

D. **Adjustment to Lodestar**

There is a "strong" presumption that the lodestar figure represents a reasonable fee. Perdue, 106 S. Ct. at 1673. In Perdue, the Supreme Court made clear that the strong presumption for the reasonableness of a lodestar fee figure can only rarely be overcome in "extraordinary cases" which will be presented in the "rarest of circumstances." Perdue at 1673. Neither party asserts that such extraordinary circumstances exist in this case to warrant an upward or downward departure from the lodestar.[4] The lodestar calculation in this case yields a total fee of $53,229.92, and pursuant to Perdue, I find that this fee is reasonable and sufficient, and should be awarded.

---

[4] Defendants suggest a downward adjustment to the lodestar figure based upon an analysis of the Johnson factors. As discussed, however, the Johnson factors guide the calculation of the lodestar amount. An upward or downward multiplier of the lodestar figure is separately determined and available only in the most extraordinary circumstances. Perdue, 106 S. Ct. at 1673.

## III.

For the foregoing reasons, I hereby **RECOMMEND** that Hudson's Motion for Attorneys' Fees be **GRANTED**, and Hudson be awarded attorneys' fees and expenses in the amount of **$53,229.92.**

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: 8/1/13

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge