IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BARBARA HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:11cv043 |
| v. ) | |
| ) | |
| PITTSYLVANIA COUNTY, VIRGINIA and ) | |
| BOARD OF SUPERVISORS OF ) | By:  Michael F. Urbanski |
| PITTSYLVANIA COUNTY, VIRGINIA, ) | United States District Judge |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff Barbara Hudson's ("Hudson") third motion for attorney's fees in this case. ECF No. 131. Defendants filed an opposition to the motion (ECF No. 133), and the matter is before the court for resolution. For the following reasons, Hudson's third motion for attorney's fees is **GRANTED in part**, and the court **AWARDS** fifty percent of the attorney's fees requested, in the amount of $3,208.34.

### I. Factual and Procedural History

Hudson brought this Establishment Clause lawsuit to challenge the practice of the Board of Supervisors of Pittsylvania County, Virginia ("the Board") of regularly opening its meetings with Board-led sectarian prayers. ECF No. 1. On March 27, 2013, the court granted Hudson's motion for summary judgment, entered a permanent injunction and dismissed the case. ECF Nos. 83, 84, 85. The court also granted Hudson's request for attorney's fees in the amount of $53,229.92 as the prevailing party, and retained jurisdiction for purposes of enforcing the permanent injunction. ECF No. 95.

The Board appealed the permanent injunction and award of attorney's fees to the United States Court of Appeals for the Fourth Circuit. ECF No. 97. The Board also filed a motion to stay this court's proceedings pending a decision by the United States Supreme Court in the case of Town of Greece v. Galloway, 134 S. Ct. 1811 (2014), which the court denied. ECF Nos. 98, 102. After the Supreme Court issued its opinion in Town of Greece, the Board filed a motion to dissolve and/or modify this court's permanent injunction in light of the Supreme Court's ruling. ECF No. 103. The court denied the motion, finding that it lacked jurisdiction to entertain the motion during the pendency of the Fourth Circuit appeal. ECF No. 107.

On December 17, 2014, the Fourth Circuit issued a memorandum opinion dismissing the Board's challenge to the permanent injunction as untimely and affirming the first award of attorney's fees. ECF No. 108. Thereafter, Hudson filed a second motion for attorney's fees, seeking an award of fees and expenses in the amount of $20,861.54, which the Board did not oppose. ECF No. 112. Upon the recommendation of the United States Magistrate Judge, the court approved the requested fees. ECF No. 126.

On January 8, 2015, the Board refiled its motion to dissolve and/or modify the injunction in light of the Supreme Court's Town of Greece decision, which Hudson opposed. ECF Nos. 113, 116, 122. In a Memorandum Opinion and Order entered May 28, 2015, the court granted in part and denied in part the Board's motion. ECF No. 124. In particular, following Town of Greece, the court modified the injunction to exclude any suggestion that opening prayers offered at the start of Board meetings must be generic or nonsectarian. Id. However, the court kept a modified injunction in place, ordering as follows:

> However, the practice of the Pittsylvania County Board of Supervisors of opening its meetings with prayer, the content of which is determined by the government itself, consistently invokes one faith tradition and does not provide an opportunity for persons of other faith traditions to participate, remains **ENJOINED**. In this fact-

> sensitive inquiry, the exclusive role of the Pittsylvania County Board of Supervisors in directing the prayers, and, importantly, dictating their content, falls outside of the prayer practice approved in Town of Greece and violates the Establishment Clause.
>
> This injunction does not preclude the Board from beginning its meetings with a prayer practice, such as the one approved of in Town of Greece, that does not run afoul of the Establishment Clause and "fits within the tradition long followed in Congress and the state legislatures." Town of Greece, 134 S. Ct. at 1819.

ECF No. 125, at 1–2. Neither party appealed the court's ruling.

Hudson now moves a third time for an award of attorney's fees, seeking $6,416.67 in fees and costs, claiming to be the prevailing party on the Board's motion to dissolve and/or modify. ECF No. 131.

## II. Legal Standard

The Civil Rights Attorney's Fees Awards Act of 1976 provides that a prevailing party in certain civil rights actions may receive "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The Supreme Court has directed that the purpose of § 1988 is to ensure meaningful and effective access to the judicial system for persons with civil rights grievances, and thus, a successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). To qualify as a "prevailing party," the plaintiff must "obtain at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 111 (1992). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." Id. (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93 (1989)). Further, courts extend the "prevailing party" requirement of § 1988 to allow collection of attorney's fees for "post judgment monitoring of a consent decree," see, e.g., Binta B. ex rel. S.A. v. Gordon, 710 F.3d 608, 622 (6th Cir. 2013), as well as post-judgment litigation that seeks to "preserve [the] fruits" of the prior judgment. Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990).

3

Once a party is deemed to be the prevailing party, the Fourth Circuit provides a three-step process to determine a reasonable attorney's fee award. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). First, the court calculates the lodestar figure by "multiplying the number of reasonable hours expended times a reasonable rate." Id. (quoting Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009)). To judge the "reasonableness" of both the hours expended and rate charged by the prevailing party's attorneys, a court must apply twelve factors identified by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted in this circuit by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). The twelve Johnson factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

Robinson, 560 F.3d at 243–44. After calculating the lodestar figure, the court must then subtract fees for time spent on any unsuccessful claims unrelated to successful claims. McAfee, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount based on the prevailing party's "degree of success" on their claims. Id. (citing Robinson, 560 F.3d at 244).

### III. Prevailing Party

Hudson was the prevailing party in the original suit for a permanent injunction, and she has twice received awards of attorney's fees in connection with that action. The issue in the present motion is whether Hudson qualifies as a prevailing party in the Board's subsequent motion to dissolve and/or to modify the permanent injunction. The Board argues that Hudson is not a

4

prevailing party because the court granted the Board's request to modify the existing injunction over Hudson's objection. Def. Mem. in Opp'n, ECF No. 133, at 5. The Board argues that the court "fundamenta[ly] change[d]" the prior injunction to favor the Board by lifting the "absolute prohibition" on sectarian prayers at Board meetings. See id. Since the Board succeeded in modifying the prior injunction to reflect the Town of Greece decision, the Board argues that it—not Hudson—is the prevailing party in this case. Id. The court disagrees.

The Fourth Circuit recognizes circumstances in which a party may lose a motion to modify an injunction but nevertheless still be the prevailing party for purposes of attorney's fees under 42 U.S.C. § 1988. See Plyler v. Evatt, 902 F.2d 273, 280–81 (1990). In Plyler, the plaintiffs obtained a consent decree governing various prison conditions within the South Carolina Department of Corrections ("SCDOC"), including strict limits on the "double-celling" of prisoners. Id. at 276. After entry of the consent decree, defendant SCDOC filed a motion to modify the decree to allow for "double-celling" of inmates at several new prisons. Id. The SCDOC's motion was initially denied by the district court, but after a reversal and remand from the Fourth Circuit, the lower court modified the prior injunction as requested by SCDOC. Id.

Nevertheless, the district court awarded attorney's fees to the plaintiffs for their unsuccessful defense of the original injunction. Id. The district court held that the plaintiffs were still the prevailing party because their defense against SCDOC's motion was "necessary to protect rights originally vindicated in the consent decree" and "involved issues inextricably intermingled with the original claims in the lawsuit." Id. at 277. The Fourth Circuit affirmed, holding that prevailing party status under § 1988 does not "turn narrowly on whether [a] party prevailed on [a] particular matter," but instead on whether the "separate proceeding is so unrelated as to justify treating it as a separate lawsuit." Plyler, 902 F.2d at 280 (internal quotations omitted).

5

The Plyler court rested its reasoning, in large part, on the purpose of § 1988's attorney's fee provision. Section 1988 provides attorney's fees to ensure that plaintiffs have meaningful access to effective legal assistance in civil rights cases. See Plyler, 902 F.2d at 281 (citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)). To ensure such meaningful access, a plaintiff who succeeds on a claim for civil rights violations ordinarily recovers attorney's fees associated with that victory. Hensley, 461 U.S. at 435. The Fourth Circuit applied this same principle to situations where the plaintiff must later defend their original victory in a second lawsuit. See Plyler, 902 F.2d at 281. When a defendant seeks to modify or eliminate a prior judgment favoring the plaintiff, that plaintiff and their counsel are "under a clear obligation to make [a] defensive effort" to "preserve [the] fruits" of their original victory. Id. "To deny attorney's fees for such a [defensive] effort, whether successful in detail or not, would obviously thwart the underlying purpose" of § 1988. Id.

As Plyler and its progeny make clear, the key question is whether a second defensive action is so "inextricably intermingled" with the original action so as to make the second action merely a "replay" of the first. See, e.g., Arvinger v. Mayor & City Council of Baltimore, 31 F.3d 196, 202 (4th Cir. 1994) (citing Plyler, 902 F.2d at 280–81). Two claims are "inextricably intermingled" when they share similar facts and legal principles. See Arvinger, 31 F.3d at 200–02 (citing Willie M. v. Hunt, 732 F.2d 383, 386 (4th Cir. 1984)). In contrast, two claims are not "inextricably intermingled" when the subsequent litigation is based on "operative facts and legal theories [that are] distinctly different" from those in the original lawsuit. Id.

For example, the Fourth Circuit in Arvinger found that two claims were not "inextricably intermingled" when the plaintiff successfully obtained a settlement agreement in his initial civil rights action, and then subsequently brought a second suit alleging that the defendants breached the terms of the agreement. 31 F.3d at 201–02. In Arvinger, the parties reached a settlement agreement concerning the plaintiff's termination from city employment. Id. at 199. The plaintiff later filed a

6

second action after the defendants "failed to live up to the bargain" obtained in his original suit. Id. at 200. While the parties were similar in both claims, the Fourth Circuit held that the second claim was "distinctly different" from the original suit. Id. at 201. Where the first lawsuit addressed the plaintiff's initial discharge and the civil rights laws relevant to his termination, the second lawsuit turned only on the "proper interpretation of the [original] settlement agreement." Id. Since the trial court in the second suit "was in no way required to address the merits of [the plaintiff's] underlying claim," the plaintiff could not carry-over his prevailing party status from the first lawsuit to the second lawsuit. Id. at 202. The plaintiff was thus unable to recover attorney's fees for his unsuccessful second suit. Id. at 201–02.

In this case, the facts more closely resemble those in Plyler, rather than Arvinger. Hudson's initial Establishment Clause suit challenged the Board's practice of opening its meetings with sectarian prayers, the content of which was determined by Board members delivering the prayers. The court agreed with Hudson that the Board's prayer practices violated the First Amendment and permanently enjoined the Board from both directing government-sponsored prayer and dictating the sectarian content of those prayers. Hudson's success in obtaining the initial injunction "material[ly] alter[ed] the legal relationship" between Hudson and the Board, thus making Hudson the undisputed prevailing party in the original suit. See Farrar v. Hobby, 506 U.S. 103, 111 (1992) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93 (1989)).

As in Plyler, Hudson was then required to defend her initial success. The Board sought to dissolve or modify the prior injunction against it, arguing that the injunction was improper following Town of Greece. Seeking to "preserve [the] fruits" of her prior victory, Hudson and her counsel countered that Town of Greece did not obviate the necessity of the injunction. The Board's motion involved identical parties, identical facts, and only required the court to apply the new Town of Greece decision to the existing injunction. Ultimately, the court agreed with the Board that the

7

injunction be modified to reflect the holding in Town of Greece, but agreed with Hudson to keep the modified injunction in place.

While the legal landscape changed to some extent following the Town of Greece decision, both Hudson's original suit and the Board's motion to dissolve or modify the injunction involved similar facts and legal principles. See Arvinger, 31 F.3d at 202; see also Plyler, 902 F.2d at 280 (holding that two claims are related where they involve the "same common core of facts or related legal theories."). Unlike the second lawsuit in Arvinger, the Board's motion in this case was not based on "operative facts and legal theories [ ] distinctly different" from Hudson's original claim. 31 F.3d at 202. Instead, the Board's motion involved identical facts and identical parties as Hudson's original lawsuit, the salient difference being the change in controlling precedent. Because the Board's motion sought to "revisit [ ] the merits" of Hudson's original claim, she had "no choice but to litigate the modification." Id. By asking the court to dissolve its injunction, the Board challenged the very foundation of Hudson's original victory. Both she and her counsel were "under a clear obligation" to litigate the motion, Plyler, 902 F.2d at 281, if only to "preserve the relief [she] originally obtained," Arvinger, 31 F.3d at 202. Since the Board's motion both (1) forced Hudson to defend the original injunction and (2) involved the same facts and similar legal theories to those found in Hudson's first suit, the court holds that the issues raised in the Board's motion are "inextricably intermingled" with Hudson's original claim. To some extent, therefore, Hudson is entitled to "carry forward" her prevailing party status to the Board's motion. See Arvinger, 31 F.3d at 202.

Awarding Hudson a portion of her attorney's fees is further supported by the underlying policy goals of fee awards under § 1988. Attorney's fees ensure that civil rights plaintiffs have meaningful access to the judicial system to bring their claims. See Hensley, 461 U.S. at 435. The two prior awards of attorney's fees in this case ensured that Hudson had meaningful access to this

8

court by compensating her attorneys for their representation. Absent such fee awards, Hudson and others like her would undoubtedly struggle to bring their claims before the courts. It would be irrational to now completely deny Hudson an award of attorney's fees for her effort to defend the original injunction a short time after her original victory. A denial of fees for this type of defensive action would "thwart the underlying purpose" of § 1988. See Plyler, 902 F.2d at 281.

At the same time, however, the court cannot ignore the fact that the Board's motion also sought modification of the injunction consistent with Town of Greece. Because the court agreed with the Board that such a modification was required, the court cannot equitably award all of Hudson's requested attorney's fees.

### IV. Fee Calculation

Having determined that Hudson may, to some extent, retain her status as a prevailing party, the court now must come up with an appropriate fee award. Hudson seeks a total of $6,416.67 in attorney's fees, representing eighteen hours and twenty minutes of total time billed at a rate of $350.00 per hour. There is no real issue with the hourly fee requested and hours worked by Hudson's counsel.

As noted above, the Fourth Circuit provides a three-step process to determine a reasonable fee award. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). First, the court calculates the lodestar figure by multiplying the number of reasonable hours expended by a reasonable billing rate. Id. (quoting Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009)). Second, the court subtracts any fees for time spent on unsuccessful claims unrelated to any successful claims. Id. Finally, the court subtracts a percentage of the fees based on Hudson's "degree of success" in her overall claim. Id.

9

### A. Lodestar Rate

In this motion, Hudson seeks attorney's fees for the work of one attorney, Rebecca Glenberg. Magistrate Judge Robert S. Ballou found on two previous occasions that $350.00 was a reasonable hourly rate for Ms. Glenberg, ECF Nos. 92, 123, the court agreed, ECF Nos. 95, 126, and the Fourth Circuit affirmed this rate on appeal. ECF No. 108, at 12–13. The Board does not contest this rate, and the court thus adopts an hourly rate of $350.00 for Ms. Glenberg.

### B. Lodestar Hours

The court must next determine the number of hours reasonably expended by Ms. Glenberg. A prevailing plaintiff typically receives a "fully compensatory fee," though hours may be adjusted for duplicative hours or hours unrelated to the successful claims. See Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). Further, this court may also use the twelve Johnson factors to guide its analysis of the reasonableness of the total amount of hours claimed in this case. See, e.g., Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 243 (4th Cir. 2010); Spencer v. Cent. Servs., LLC, No. CCB-10-CV-3469, 2012 WL 142978, at *2 (D. Md. Jan. 13, 2012). Finally, Hudson bears the burden to document the hours her attorneys spent on the lawsuit, and she must provide "standardized time records which accurately reflect the work done by each attorney." Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

In this case, Ms. Glenberg provided a declaration with the total hours spent representing Hudson, and included a detailed billing report with descriptions of the work performed and time expended. ECF Nos. 132-1, 132-2. The hours billed involve research and writing to respond to the Board's motion to dissolve, preparation and travel for court hearings, drafting of one supplemental brief on Lund v. Rowan County, North Carolina, No. 1:13-CV-207 (M.D.N.C. May 4, 2015), and preparation of this fee request. As in Hudson's two prior requests for attorney's fees, Ms.

Glenberg's declaration and billing report thoroughly account for her hours, and the court finds the total of eighteen hours and twenty minutes to be reasonable.

The Board raises a number of objections to the total amount of hours claimed by Ms. Glenberg, framing them in terms of the twelve <u>Johnson</u> factors. <u>See</u> ECF No. 133, at 5–10. For factors (2), (3), (4), (6), (7), (9), (10), (11), and (12), the Board either fails to make any substantive argument or argues that the factor is "neutral," warranting neither an increase nor decrease in Ms. Glenberg's hour total. The court agrees that these nine factors do not impact the current calculation, and will not use them to justify any change in Ms. Glenberg's initial hour total. For factor (8), the Board claims that it—not Hudson—succeeded in obtaining a modification of the injunction, which requires a reduction in the fee award. To be sure, the injunction was modified. However, the court believes it more appropriate to account for this factor in the final step of the fee analysis, rather than in the loadstar calculation. <u>See</u> <u>Grissom v. The Mills Corp.</u>, 549 F.3d 313, 321 (4th Cir. 2008) (holding that parties may subtract "some percentage" of the remaining loadstar amount based on the "degree of success" enjoyed by the plaintiff); <u>Quantum Sys. Integrators, Inc. v. Spring Nextel Corp.</u>, No. 1:07-CV-491, 2009 WL 3423848, at *8 (E.D. Va. Oct. 16, 2009) (electing to reduce the lodestar value over eliminating specific hours to account for plaintiff's "limited success.").

Finally, the Board raises several arguments under factors (1) and (5), generally claiming that Ms. Glenberg took longer than necessary to perform specific tasks. As in past objections to Ms. Glenberg's fee awards, the Board cites no substantive authority to support their criticism of Ms. Glenberg's timesheets. After careful review of Ms. Glenberg's fee request, this court finds her hours billed to be reasonable and appropriate. Thus, after accounting for the Board's objections and the <u>Johnson</u> factors, the court finds that Ms. Glenberg is entitled to fees for the eighteen hours and twenty minutes claimed in her fee request.

11

### C. Lodestar Calculation

Applying the rate and hour totals outlined above, the lodestar calculation yields the following amount of attorney's fees in this matter:

| Attorney Name | Hours | Rate | Total |
|---|---|---|---|
| Rebecca Glenberg | 18 hours, 20 minutes | $350.00 | $6,416.67 |
| | | **Total Fees**: | $6,416.67 |

### D. Adjustment to Lodestar

A strong presumption exists that the "lodestar number represents a reasonable attorney's fee" and "this presumption can only be overcome in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." McAfee v. Boczar, 738 F.3d 81, 88–89 (4th Cir. 2013) (quoting Perdue v. Kenny, 130 S.Ct. 1662, 1673 (2010)), as amended (Jan. 23, 2014). At the same time, however, the Fourth Circuit's three-step process to calculate attorney's fees allows the court to make certain adjustments to the lodestar figure. Once the first step—which calculates the lodestar amount—is complete, the second step allows courts to "subtract fees [from the lodestar figure] for hours spent on unsuccessful claims unrelated to successful ones." See McAfee, 738 F.3d at 88; Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002). In this case, the Board makes no argument that Hudson's total fee request must be reduced because Hudson pursued both successful and unsuccessful claims. The court thus finds no need to subtract fees at the second step.

In the final step of the fee analysis, a court may further reduce the remaining fee amount by a percentage reflecting the prevailing party's "degree of success" in their claims. See, e.g., Robinson v. Equifax Info. Servs., 560 F.3d 235, 244 (4th Cir. 2009). "[T]he degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award." Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (quoting Hensley v. Eckerhart, 461 U.S.

12

424, 436–37 (1983)). A court must ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." McAfee, 738 F.3d at 92 (quoting Hensley, 461 U.S. at 439–40). While there is no "precise rule or formula for making this [final] reduction to the lodestar amount," courts may generally (1) reduce the overall award "to account for [the prevailing party's] limited success" or (2) "identify specific hours that should be eliminated." Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010) (citing Hensley, 461 U.S. at 436–37), aff'd sub nom., 442 F. App'x 776 (4th Cir. 2011). In making such a reduction to the final lodestar amount, courts have "broad discretion" to ensure the ultimate award of attorney's fees "accurately reflect[s] the extent of a litigant's success." Lux v. Judd, 868 F. Supp. 2d 519, 533 (E.D. Va. 2012) (citing Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)).

In this case, both parties claim total victory on the motion. Hudson argues that the Board was "entirely unsuccessful" because the court declined to dissolve the prior injunction. ECF No. 132, at 3. The Board disagrees, noting the court granted a measure of the relief sought by the Board when it modified the injunction to reflect the holding in Town of Greece. ECF No. 133, at 5. Since the Board secured its requested modification, it claims that Hudson is the unsuccessful party in this case. Id.

As one court has recently noted about fee cases, "the truth is somewhere in the middle." Corral v. Montgomery Cnty., No. 13-CV-0444, 2015 WL 1037960, at *14–15 (D. Md. Mar. 9, 2015). Hudson successfully prevented dissolution of the court's original injunction. At the same time, the court granted the Board's request to modify the injunction consistent with Town of Greece.

The court believes Hudson's final fee award should reflect this mixed outcome. While Hudson remains a prevailing party who is entitled to reasonable attorney's fees, the modification obtained by the Board was not meaningless. Mindful of its power to make "equitable judgments" in

13

adjusting the lodestar amount, see Hensley, 461 U.S. at 437, the court finds that a fifty percent reduction in the lodestar amount is appropriate to reflect Hudson's level of success on this motion. See Corral, 2015 WL 1037960, at *15 (reducing fee award by one-third where plaintiff failed to obtain preliminary or permanent injunction in First Amendment suit against county government); Lilienthal, 322 F. Supp. 2d at 675 (reducing lodestar amount by forty percent where prevailing party's success was "less than total."). This reduction accounts for the unique circumstances presented in this case, in which the Supreme Court issued an opinion on prayer at local government meetings a year after the injunction issued and while the parties were still engaged in appellate proceedings. Further, a fifty percent reduction still provides an award of attorney's fees that is sufficient to satisfy the policy goals of § 1988. See Hensley, 461 U.S. at 435; see also Blum v. Stenson, 465 U.S. 886, 897 (1984) ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.").

Accordingly, the court will exercise its discretion to reduce Hudson's fee award from $6,416.67 to $3,208.34.

## V. Conclusion

For the reasons stated above, the court will **GRANT in part** Hudson's third motion for attorney's fees, and **AWARD** fifty percent of the attorney's fees requested, in the amount of $3,208.34.

An appropriate Order will be entered.

Entered: September 28, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge